JUDGE LINDSAY
delivered the opinion oe the court.
This action is for the recovery of ten thousand dollars, the amount of a policy of insurance issued to. Cornelia A. Neyland *433 upon the life of her husband, W. Neyland, by the Mississippi Valley Life Insurance Company.
The application was made to Hollyman, an agent of the company authorized to solicit insurance and to receive applications therefor, on the 8th of September, 1868. He on that day delivered to the applicant a receipt signed by one M. S. Myers, agent, termed a “binding receipt,” which acknowledged that the first annual premium (the sum of three hundred and twenty dollars) had been paid, and stipulated that Neyland was “ to be insured from the date of this receipt, in accordance with the provisions' of the policies of said company, in case said application shall be approved and accepted by said company ; the policy to be delivered when issued, and the amount, the receipt whereof is herein acknowledged, to be repaid to him in the event of said application being declined by said company.”
The cash portion of this premium (one hundred and sixty dollars) was paid by the agreement on the part of the agent, Hollyman, to satisfy the company therefor, he being indebted to Neyland for legal services rendered by the latter; for the balance, it is .claimed,, a note was executed.
Hollyman failed to comply with this contract. On the 6th of November the application was received by Conklin, the general agent for the state of Texas, and by him at once forwarded to the principal office at Covington, Kentucky. On the same day he wrote to Neyland that Hollyman had been discontinued as agent of the company. On the 16th of November Mellon, another agent of the company, wrote to Conklin, expressing to him the opinion that Neyland had paid no money to Hollyman, and his belief that the “binding receipt” had been delivered in satisfaction of the agent’s debt, and advised him to investigate the matter. On the 12th of the same month Neyland wrote to Mellon, forwai'ding to him the “binding receipt,” claiming that he paid to Hollyman one half the *434 amount of the premium and executed his note to the company for the balance, and asking, in case the company did not intend to ratify the contract of insurance, that his money be refunded and his note returned. This letter was forwarded to Conklin. On the 5th of December Neyland wrote to Conklin to the same effect. On the 11th Conklin answered Neyland, expressing his regret at the complication of matters growing out of Hollyman’s conduct, and proposing to deliver the policy if Neyland would pay eighty-two dollars in money and execute a new note in lieu of the one Hollyman had failed to deliver. On the 7th of January, 1869, Neyland accepted this proposition, and requested that the receipt for the money, together with a blank note and the policy, should be sent to one For-wood, at Jasper, Texas, or to some one else, as Conklin might determine. Conklin forwarded the papers to Mellon, with instructions that they be sent to Forwood, if he was a proper person, and if not, to some one else. Mellon sent them to Forwood, and on the 21st of January this last arrangement was consummated by the payment of the eighty-two dollars in money, the execution of the new note, and the delivery of the policy. On the 24th of February, a little more than a month afterward, Neyland died.
The company defends upon several grounds.
1. It claims that Hollyman was not its agent at the time the application for the insurance was made.
2. Because Hollyman and Neyland combined to defraud it by falsely pretending that one hundred and sixty dollars of the first premium was paid in money, when in point of fact no money was paid.
3. That Neyland was fatally sick when the policy was delivered under the arrangement with Conklin, which fact was concealed from him.
4. That Neyland in the application made false statements as to his health and physical condition.
*435 The evidence does not support the first ground of defense. Conklin speaks in general terms of removing Hollyman before the 8th of September, 1868, but the copy of the letter filed with his deposition, which he professes to have written to Hollyman, discontinuing his agency, bears date September 28, 1868, twenty days after the application had been made. Besides this, in his correspondence with Neyland he did not repudiate Hollyman’s action in receiving the application, but complained that he had failed to settle his accounts with the company.
As to the second ground of defense, the court in effect instructed the jury that if Hollyman was the agent of the company on the 8th of September, 1868, authorized to receive applications for insurance and to collect premiums and deliver “ binding receipts,” and in good faith and for a valuable consideration he in this ease agreed to provide for and become personally responsible to the company for the cash portion of the premium, and did deliver to Neyland a “ binding receipt,” signed by a person having at the time of the signing the right to represent the company, and of whose removal or resignation the public had not been notified, and of which fact both Holly-man and Neyland were ignorant, then as matter of law the first premium was paid, and it was the legal duty of the company to execute and deliver the policy.
Appellant insists that this instruction is radically wrong; that the agent had no right to deliver the “binding receipt” except upon the payment to him of the money; and that by the terms of the policy the insurance did not become binding upon the company until the money was paid. Hollyman’s deposition was taken by the company. He proves that he had the right to retain a certain portion of premiums received, and that he was entitled to fifty dollars out of the cash premium paid by Neyland.
The weight of modern authority is that a general agent of *436 an insurance company, whose business it is to solicit applications for insurance and receive the first premiums, has the right to waive the condition requiring payment in money, and to accept the promissory note of the applicant or of a third party in lieu thereof, or to undertake to make the payment to the company himself, and that when the cash payment is actually waived in either of these modes the contract binds the company, notwithstanding the recital in the policy that it is not to be binding until the cash portion of the first premium is actually paid in money. (Galt v. National Protection Insurance Company, 25 Barbour, 189; Bohen et al. v. Williamsburg City Insurance Company, 35 New York; Sheldon v. Connecticut Mutual Life Insurance Company, 25 Conn. 207.)
The powers of these general agents are prima faoie coextensive with the business intrusted to their care, and while acting within the scope of their duties and apparent authority parties dealing with them have the right to presume that they can waive any of the conditions of the contract that might be waived by the principal officers of the corporation. If they disregard limitations placed upon their authority, the company for whom they act, and not the person dealing with them, should bear the loss, unless such person had notice of these limitations. (Insurance Company v. Wilkinson, United States Supreme Court, American Law Register, August, 1872, p. 485.) This doctrine was recognized by this court in the case of St. Louis Mutual Insurance Company v. Kennedy (6 Bush, 450).
Neyland had no reason to suppose that Hollyman, in making the contract with him, was disregarding private instructions given by the company. He had the right to assume that Hollyman possessed all the powers that other persons performing similar duties and clothed with like authority possessed. There is no evidence conducing to show a fraudulent combination between the agent and Neyland; the contract was consummated by the delivery of the “bind *437 ing receipt.” Nothing remained to be done by either party, except that the company was to prepare and deliver the policy, the formal evidence of an already consummated contract.
The company has no right to repudiate the “binding receipt” because Myers, by whom it was signed, had ceased to act as its agent for the state of Texas. His successor, Conklin, knew that Hollyman was in possession of receipts signed by Myers. It is doubtful whether prior to the contract with Neyland he had taken any steps to recall these receipts from the hands of this agent, and it is clear that the public had not been notified that Myers had severed his connection with the company.
We are of opinion that the instruction under consideration correctly expounds the law of this branch of the case. This conclusion renders it unnecessary to consider the third ground of defense. The remaining ground, that Neyland made false statements as to his health and physical condition in answer to questions contained in the application, was fairly presented to the jury by instructions Nos. 2, 7, and 8, given at the instance of the appellee, and the evidence is not such as will authorize this court to disturb the finding.
Appellant has no right to complain on account of the exclusion from .the jury of the pamphlet containing its private instructions to its agents, nor of letters written by one of its agents to another. The instructions asked by appellant and refused by the court conflict with the views herein expressed, and were properly refused.
There being no error in the proceedings in the court below prejudicial to appellant’s substantial rights, the judgment is affirmed.