# Terry v. The Mutual Life Insurance Company.

*Statutory Action of Detinue.*

1. *Signing contract of conveyance without reading it; false representations.*—A party signing a contract or conveyance, can not, in the absence of some fraud or deceit practiced upon him by or for the opposite party, be heard to say he did not read the paper or know its contents; and where, in the settlement of an indebtedness, it is agreed that the debtor would transfer to the creditor certain designated property, and in the preparation of the papers for execution by the debtor, there is included in the instrument property in addition to that designated, and at the time of the execution of such conveyance the creditor's attorney, who had no connection with the settlement and knew nothing about the instrument of conveyance, except what it disclosed, laid it before the debtor saying that that was the paper he had agreed to sign, whereupon he signed it without reading it, and not knowing that it included a transfer of such additional property,

[Terry v. The Mutual Life Insurance Company.]

such facts do not show that the transfer of the property, which was not agreed to be conveyed, had been obtained by false representations, and the debtor can not be heard to say he did not know the contents of the instrument which he signed.

2. *Action of detinue; when can be maintained; effect of mistake in the delivery of property.*—Where the holder of a policy in a life insurance company, transfers it to a third person, who surrenders it to the company, with the request that a paid-up policy be substituted therefor, and the company issued a paid-up policy as requested, but by the mistake of its clerk said substituted policy is sent to the original holder, the insurance company can maintain an action of detinue against him for the policy.

APPEAL from the Circuit Court of Henry.

Tried before the Hon. M. E. MILLIGAN, Special Judge.

The appellant, who was the defendant in the court below, appealed from a judgment in favor of the appellee, and assigns as error the giving of the general affirmative charge in favor of the plaintiff. The facts of the case are sufficiently stated in the opinion.

ESPY & FARMER, and H. A. PEARCE, for appellant.—The plaintiff in this suit was not entitled to maintain it. It was shown that the plaintiff did not have the legal title coupled with the right to immediate possession.— *Dozier v. Joyce,* 8 Porter, 303 ; *Peirce v. Hill,* 9 Porter; 151 ; *Traylor v. Marshall,* 11 Ala. 458.

FRED S. BALL, *contra.*

HEAD, J.—This is an action of detinue by the appellee, Mutual Life Insurance Company, against appellant, T. W. Terry, to recover a certain paid-up policy of insurance written by the appellee upon the life of the appellant. The evidence tends to show that in January, 1891, the appellant, Terry, being indebted to Chisholm & Co., transferred to them as security a policy of life insurance on his life written by the appellee of which the paid-up policy, in suit, was a renewal in its paid-up form. He also executed to Chisholm & Co. a mortgage on certain property to secure said indebtedness. After- wards, while these securities were in force, the said orig- inal policy was surrendered to the company with a re- quest for the issuance of a paid-up policy ; that the paid- up policy was made out and placed in the hands of the agent of the company at Atlanta, Ga., for delivery ; that

the policy was forwarded to appellant, and by him received. The evidence on the part of the appellee was that the original policy was surrendered by Chisholm & Co., and the new policy issued, at their request, to be delivered to them and should have been delivered to them, and that the same was sent to appellant by mistake on the part of a clerk. The evidence on the part of the appellee also tended to show, that after the said securities had been given to Chisholm & Co., that firm had a settlement with the appellant, and the latter transferred to them, absolutely, in payment of his indebtedness to them, the said original policy and the property contained in said mortgage. The appellant contended that he had never transferred the policy in payment of the indebtedness, but that he paid and discharged the said indebtedness by a transfer to Chisholm & Co., of the property contained in the mortgage, so that the policy became his unincumbered property. It is not disputed that on September 24, 1892, the appellant did sign and deliver to said Chisholm & Co. an absolute written transfer of said original policy, upon the recited consideration of being released from all indebtedness owing by him to them. This was more than a year after the said policy had been first transferred. Indeed, the first transfer was in writing and was absolute on its face, though the evidence is without conflict that it was intended as a security. It is not claimed by the appellant that the said transfer of September, 1892, was made by him as a security for a debt, but the position he takes in reference to it is, in effect, that he signed the paper upon false representations made to him by the attorney of Chisholm & Co., as to the character of the papers he was signing, and that, in effect, he never executed the said transfer. The trial court gave the general affirmative charge for the plaintiff, and that is the only error assigned in this court. The testimony touching the execution of said last transfer was given by the appellant and was as follows : "On January 26, 1891, being largely indebted to Chisholm & Co., he transferred to them as collateral security policy 436,335 on his life issued by plaintiff company ; that they also held a mortgage to secure the indebtedness for that year ; that in 1892 he took up that mortgage by giving another on his business and property ; that about September, 1892, being indebted to Chisholm

& Co., and being in too bad health to give his business proper attention, he went to Savannah and had several conferences with that firm in reference to a settlement of his indebtedness; that they finally agreed that he should convey to them all the property conveyed by the mortgage of 1892, consisting of lands, timber privileges, tram roads, etc., and they were to pay him $500 in cash, pay off his hands the amount then due, and give him a receipt in full; that the policy of insurance was not included in the mortgage, nor did he agree to sell it to them; that Mr. Henderson, a member of the firm, asked, 'What about the policy?' and he replied 'Let it go, I am not able to keep it up;' that they said they would send the papers to Valdosta to their attorneys for execution; that when first called upon to sign the paper, he refused to do so because the mortgage was not there to be surrendered to him; that on September 24th, 1892, Mr. Cranford called to him to come up to his office and sign the papers, as the mortgage had come; that he went up to his office and Mr. Cranford laid the papers before him, telling him that they were the papers that he had agreed to sign; that Mr. W. Hawkins was present; that he was in feeble health, and that there were quite a number of papers for signature, and he signed them as they were placed before him without reading any of them; that the bill of sale was among the papers he signed; that he never agreed to give Chisholm & Co. such a bill of sale, and he was not informed by Wilkinson and Cranford, or either of them, that such was the nature of the paper handed him for execution.''

Upon careful examination of this statement, we are unable to see that it tends to make a case of false or fraudulent representations inducing the execution of the transfer, or bill of sale, as it is called, by the appellant. It is a well recognized rule that a party signing a contract or conveyance cannot, in the absence of some fraud or deceit practiced upon him, by or for the opposite party, be heard to say that he did not read the paper or know its contents. It is the duty of one about to sign such a paper to take the necessary steps to inform himself of the particular contents of the instrument before signing and delivering it. If, however, the opposite party, or his agent, fraudulently represents to the party signing, that the contents are such as are materially dif-

ferent from what appears in the instrument, the party signing may, in good faith, rely upon such representations, and upon subsequent discovery of the fraud, he will not be precluded from setting it up and avoiding the instrument. The decisions of this court are familiar upon this subject. The substance of the evidence above copied is, that terms of settlement had been agreed upon between Chisholm & Co. and appellant in Savannah, Ga.; that the papers were afterwards, to be, and were prepared and sent to the attorneys of Chisholm & Co. at Valdosta, for execution, and one of the attorneys laid the papers before appellant, telling him they were the papers he had agreed to sign; and he signed them without further inquiry or investigation. There was no representation, at all, made by the attorney, as to what either of the papers contained. The previous arrangement between the parties carried knowledge to the appellant that the papers had not been prepared by the attorney at Valdosta, but were prepared in Savannah, and sent to the attorney merely for the purpose of exetion. This attorney had no connection with the settlement which had been arranged between the parties, and there is nothing to indicate that he knew anything about the terms thereof, except what the papers sent to him disclosed. He was not in the position to make representations to the effect that the contents of the papers truly represented the terms of settlement which had been previously agreed upon. These facts were fully known to appellant, as appeared from his own testimony, and it is simply a case of one signing papers presented to him, without reading them, or taking steps to inform himself of their contents. There was, therefore, no evidence of fraud to submit to the jury touching the execution of the transfer; and upon the facts, as they now appear before us, the policy mentioned therein—the original policy—became thereby the absolute property of Chisholm & Co.

As we have said, the evidence for the plaintiff, if believed, showed that the policy in suit was sent by the agent of the plaintiff to the appellant by mistake of a clerk. It is true that the appellant's testimony tended to show that upon receiving notice from the company that his premium was due, he, by letter, requested it to send him a paid-up policy, and that he received the pol-

icy in suit a short time thereafter, but this is explained by, and is not in conflict with, the testimony above referred to, showing that it had been sent to him by mistake. The result is that there is no conflict in the evidence that the policy was sent to him by mistake, and such being the case, the plaintiff was entitled to reclaim it, and hence was entitled to maintain this suit.

The court properly gave the general charge for the plaintiff, and the judgment is affirmed.

Affirmed.