CASE 42—ACTION ON INSURANCE POLICY—Nov. 2.

# Washington Life Insurance Co. of New York v. Menefee's Executor.

APPEAL FROM GRANT CIRCUIT COURT.

1. BILL OF EXCEPTIONS—FILING *nunc pro tunc.*—A bill of exceptions noted by the clerk as filed without an entry of an order of record filing it may be filed by an order *nunc pro tunc*, and when so filed will be treated by this court as correct in the absence of any showing that the bill actually filed was different from that copied into the transcript.

2. INSURANCE—LIFE—POWERS OF GENERAL AGENT.—The powers of a general agent of an insurance company are *prima facie* co-extensive with the business entrusted to his care and while acting within the scope of his duties and apparent authority, parties dealing with him have the right to presume that he can waive any of the conditions of the contract that might be waived by the principal officers of the corporation. If he disregarded limitations placed upon his authority the company for whom he acts, and not the person dealing with him, should bear the loss unless such person had notice of these limitations.

3. SAME—NOTICE.—Where the party insured executed to the general agent of a life insurance company his notes for the premium, and thereupon the policy was delivered to him, reciting that the consideration is to be paid in advance, with a receipt for the cash premium, upon which was printed in red ink a provision that no person except the president, vice-president or secretary of the company was authorized to make, alter or discharge contracts or to waive forfeitures, it is held that such facts did not constitute notice to the insured of limitations upon the power of the general agent to waive the provision with reference to payment of premium in cash.

C. J. AND W. W. HELM FOR APPELLANT.

1. The only question of law is whether a general agent of an insurance company, which inserts in its printed applications, policies and receipts for premium, notice that no person except the president, vice-president or secretary can waive printed conditions, can take a note payable to himself personally for the premium, instead of cash, where the latter is required by the terms of the policy. Miss. Valley Ins. Co. v. Neyland, 9 Bush, 430; Phoenix Ins. Co. v. Spiers & Thomas, 87 Ky., 285; Hartford Life & Ann. Co. v. Hayden's Admr., 90 Ky., 39; Stewart v. Union Mut. Life. Ins. Co., 155 N. Y., 257.

W. W. DICKERSON AND C. C. CRANE FOR APPELLEE.

1. The bill of exceptions is not a part of the record. Freeman v. Brenham, 17 B. M., 480; Corley v. Evans, 4 Bush, 409; Com., for use, &c., v. Lewis, 19 Ky. Law Rep., 170.

2. The general agent had power to waive the payment of cash premium in advance and the company is estopped to deny such power. Fireman's Fund Ins. Co. v. Norwood, 69 Fed. Rep., 71; Stewart v. Union Mut. L. Ins. Co., 155 N. Y., 257; Union L. Ins. Co. v. Haman (Neb.), 74 N. W. R., 1090; West v. Norwich Union F. Ins. Co., 10 Utah, 442; Hartford L. Ins. Co. v. Hayden's Admr., 90 Ky., 39.

Counsel discussed other questions which became immaterial in view of the opinion of the court.

C. J. & W. W. HELM FOR APPELLANT IN PETITION FOR REHEARING. ·

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

On the 26th of March, 1897, the appellee's testator made application for a life insurance policy from the appellant through its local agent in Grant county. The policy was made out for $5,000, dated March 31st, and sent to the local agent. Menefee died July 20, 1897, and appellee qualified as executor. Suit was brought upon the policy, and the trial court, the law. and the facts being submitted to the court, rendered a judgment in favor of appellee.

The first question presented on this appeal is whether there is any bill of evidence. The record shows no order filing the bill of exceptions, but does show a copy of a bill of exceptions with an indorsement, "Filed June 16th, 1898," and having a certificate in the usual form, signed by the judge. The question having been raised by appellee's brief, appellant filed an additional record, showing a *nunc pro tunc* order filing the bill of exceptions upon affidavits showing an order to have been in fact made by the judge, and an indorsement of the filing made upon the bill. The order provides: "It is now ordered that the bill of evidence herein is now filed and made part of the record as of June 16, 1898, the said bill having been ordered filed and made part of the record on that day, and the same was, by inadvertence, omitted to be entered in the orders of this court for that day." The evidence whereon to make the order seems to have been sufficient. The court had before it the original bill bearing the judge's certificate and signature, indorsed by the clerk, and the affidavit of the clerk that he so indorsed it on June 16, 1898. The *nunc pro tunc* order hav-

ing been properly made, the additional record must be read with the original record, and the order read as if made upon the date for and as of which it was entered. This being so, we can not assume, as urged by appellee, that the bill of exceptions copied into the record is not a copy of the bill referred to by the order, a copy of which is now in the record.

It is urged that the record does not show anywhere that the circuit judge verified, or in any way compared, the bill filed by the *nunc pro tunc* order with the bill now before us. This objection, we think, has been already answered.   It is true the bill in the record here may not be a correct copy of the bill as signed by the judge, but the appellee has his remedy in this case, as he has in any other case of an incorrect copy of the record.

The answer avers that the premium was not paid in advance, and that the application, the policy and the receipt for the premium gave notice of a limitation upon the authority of all agents or officers of the insurance company, except the president, vice-president, or secretary, to change the terms or waive the conditions of its policies; that one of the conditions of the contract was that the company should incur no liability until the application had been approved, and a policy issued, and the premium actually paid to and accepted by the company, or its authorized agent; that appellee's testator, with knowledge that the policy was not intended to be effectual until the cash premium was paid, undertook to procure the money to pay it by borrowing it from Parker, the general agent of the company, and executed his note at four months for $341, the amount of the premium, the note being made payable "to the order of John Alley Parker (Personal);" but that Parker did not pay the amount to the company, and the com-

pany had no knowledge of any agreement or transaction between Parker and the testator.

By the reply and amended replies there were set up in various forms waivers by the company, and by its general agent, of the provision requiring a cash payment, and these averments were put in issue by rejoinders.

The trial court found that the policy and the receipt for the premium were delivered to the decedent in his lifetime, and that Alexander, the agent, held the policy for safe-keeping; and, further, that Parker was the general agent of the defendant (appellant) for the State of Kentucky, and that as such, under the law, he had a right to take the note of the testator to himself personally, in lieu of the premium payable in advance, and that he did so.

The clause of the application relied on for the defense is conceded to refer only to liability upon the application, and not upon the policy. The clause of the policy relied on is the provision that the company, "in consideration . . . and of the sum of $341, to be paid in advance, . . . does insure the life of George W. Menefee;" and the further provision at the foot of the first page: "No person except the president, vice-president, or secretary is authorized to make, alter, or discharge contracts, or to waive forfeitures." There was attached to the policy a receipt for the cash premium, dated New York, March 31, 1897, signed by the secretary, upon which, printed in red ink, was this provision: "No person except the president, vice-president, or secretary is authorized to make, alter, or discharge contracts, or to waive forfeitures. This receipt, to be valid, must be countersigned by the agent on receiving the premium." Across the receipt are printed the words

"Countersigned by," with a blank for the signature of the agent. The receipt was not countersigned.

There being evidence to support the findings of the court upon the facts, they must be taken in this case as the verdict of a jury would be.

The sole questions remaining are: First, whether Parker, the general agent, could waive the limitation in the policy as to payment in advance, it having been found that he did so if he had the power; and, second, if he did not have such power, whether there was a failure of notice to Menefee sufficient to put him upon inquiry as to the limitation upon Parker's authority.

The cases quoted by appellant concede the general rule to be that:

"The powers of these general agents are *prima facie* co-extensive with the business intrusted to their care, and while acting within the scope of their duties and apparent authority, parties dealing with them have the right to presume that they can waive any condition of the contract that might be waived by the principal officers of the corporation. If they disregard limitations placed upon their authority, the company for whom they act, and not the person dealing with them, should bear the loss, unless such person had notice of these limitations." (Miss. Valley Insurance Co. v. Neyland, 9 Bush, 430.)

To the same effect are Phoenix Insurance Co. v. Spiers, 87 Ky., 285, [8 S. W., 453], and Hartford, &c., Insurance Co. v. Hayden's Adm'r, 90 Ky., 39, [13 S. W., 585].

Was this provision notice to the applicant for insurance that the premium must actually be paid *in cash* before the policy became effective? We think not. In our opinion, nine persons out of ten would assume, if they read the policy, that the execution and acceptance of a note to the

agent were a compliance with that provision. The facts appearing in this case—that the general agent of a foreign company, standing in this State in the place of the company, furnished a printed blank on which to execute a note for the first premium; that the note was executed thereon, accepted by the general agent of the company, and thereupon the policy and a receipt for the premium delivered to the applicant—amounted to a representation by the general agent that he was authorized to accept the note in lieu of the cash, and that the transaction was a payment in advance. It must be borne in mind that in a transaction in which a company, a citizen of a distant State, is represented by a general agent, who is acting clearly within the general scope of the business, presumably committed to his charge, a higher and better degree of notice to the other party to the transaction of the limitations, if any, existing upon such agent's authority, will be required than in cases where the principal itself is at hand.

And so of the notice which is claimed to have been given by the language printed in red ink upon the receipt. The deceased executed his note for the premium, and received in return a receipt for it, and the policy. He was dealing with the general agent. He had the right to assume, without investigation, that the general agent was acting within the scope of his powers and had all the authority to act in that behalf that the principal could exercise, and therefore to rely upon the delivery of the policy and the execution of his note as a payment of the premium, without any examination of the receipt.

Every one who knows anything of insurance knows, and this court knows, that this is a usual and customary mode of taking out life insurance policies. The gen-

eral agent represented the company in this State. It was within the general scope of his authority to deliver policies and receive premiums. The applicant had the right to so assume. The policy was delivered. It was delivered with full knowledge of the facts upon which its validity might be disputed. To insist now upon those facts as ground for avoiding the policy is to attempt a fraud. "This the courts will neither aid nor presume; and when the alternative is to find this, or to find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter." (May on Insurance, section 497.) The company can not play fast and loose, nor ask the court's assistance in the issuance of policies for the purpose of collecting the premium, but void for collecting the insurance.

The note executed by Menefee would, in a suit upon it, undoubtedly have been held valid, had he pleaded no consideration, upon the ground that the general agent knew the facts which might have operated to avoid the policy at the time he delivered it, and thereby waived them. (Stewart v. Union Mutual L. Insurance Co., 155 N. Y., 257, [49 N. E., 876].)

This being our view of the case, the form of the findings of the trial court becomes immaterial.

The judgment is affirmed.