Case 98.—ACTION BY AMELIA LAUER AGAINST THE GERMANIA LIFE INS. CO., OF NEW YORK, ON A POLICY ON THE LIFE OF HER DECEASED HUSBAND, NOV., 14.

## Germania Life Ins. Co. of N. Y. v. Lauer.

Appeal from Jefferson Circuit Court (Common Pleas Branch, 3d Division.)

MATT O'DOHERTY, Judge.

Judgment for Plaintiff.    Defendant appeals.    Reversed.

1. Insurance—Life Insurance—Authority of General Agent—Waiver of Conditions in .Policy.—A general agent of a life insurance company has authority to waive the condition in a policy stipulating that it shall not become effective unless the first premium is paid during the continued good health of the insured.

2. Same—Proof of Waiver—A waiver of a stipulation in a life

policy must not only be made intentionally by one having authority to waive the condition, but with full knowledge of the existing facts.

3. Same—Evidence of Waiver—Sufficiency.—A life policy stipulated that it should not take effect until the first premium had been paid during the continued good health of the insured. About a week after the policy was delivered to the insured, he was taken sick with delirium tremens and died three weeks later. On the day of his death, and a short time prior thereto, his brother paid to the agent of the insurer the premium. At the time the premium was paid the agent knew that insured was sick, but did not know the nature of his illness, or that he was in a dangerous condition, or that his illness would result fatally, or that he had been suffering with delirium tremens for about three weeks, or that he was actually in a dying condition when the premium was paid. Held, insufficient, as a matter of law, to show a waiver of the condition.

OPINION BY JOHN D. CARROLL—Commissioner.

This appeal is prosecuted from a judgment in favor of appellee, as widow of Charles Lauer, against appellant, for $1,000, the amount of a life insurance policy issued by appellant to Charles Lauer, on March 23, 1903. Payment of the policy was resisted by appellant chiefly upon the ground that the first premium was paid, when the insured was dangerously ill, to its agent, who was ignorant of his condition and believed him to be in sound health; that the payment was made by the brother of insured who had knowledge of his serious illness but concealed this fact from the agent who accepted the premium; and that the stipulation in the policy that it should "not take effect until it shall have been delivered and accepted and the first premium paid during the continued good health of the insured" was not waived, and therefore the policy did not become effective during the life of the insured.

The facts of the case are substantially as follows: H. P. Reiger, manager of appellant for the states of

Kentucky and Tennessee, induced the insured to take the insurance after he had passed a satisfactory examination. There is some question as to whether or not the policy was accepted by Charles Lauer, but we do not deem it necessary to consider this feature of the case. The policy was delivered to the insured on March 23, 1903, and about a week thereafter he was taken sick and confined to his house until his death on April 22, 1903. A few days after the policy was delivered Reiger was also taken sick, and did not leave his home until April 22, 1903, on which day he was called over the telephone by Henry Lauer, a brother of the insured, who requested him to stop at his place of business. About noon on this day Reiger called at Henry Lauer's place of business, and was paid by him in cash the full amount of the first premium, which he accepted. A few minutes after the premium had been paid, and while Reiger was yet in the place of Henry Lauer, a telephone message was received stating that Charles Lauer had just died. There is sharp conflict in the evidence as to what occured at the time and immediately before the premium was paid. Reiger testifies that he did not know at the time he accepted the premium that the insured was sick at all, and that if he had known it he would not have accepted the premium. Henry Lauer and other witnesses testified that Reiger was informed by Henry Lauer before he accepted the premium that the insured was at the time seriously ill. Reiger was that character of agent who had the right to waive the condition in the policy providing that it should not become effectual unless the first premium was paid during the continued good health of the insured. (Washington L. Ins. Co. v. Menefee's Ex'r, 107 Ky. 244, 21 Ky. L. R. 916, 53 S. W. 260; Connecticut Indemnity Ass'n v. Grogan, 52 S. W. 959, 21 Ky. Law Rep. 717); and, conceding that Reiger could waive the

stipulation in the policy, the question remains, did he waive it? In the consideration of this question, which will determine this case, we will look with some detail into the evidence offered by appellee.

Dr. Stultz, the attending physician, who was introduced as a witness for appellee, testified, in substance, that the cause of his death was cerebral congestion, produced by delirium tremens. He said that he did not regard the disease as necessarily fatal, but that he had been a very sick man for two or three weeks before his death, and was delirious and out of his mind most of the time, but occasionally rational; that he kept him under the influence of narcotics a good portion of the time; that he considered the case at all times serious and so informed the family telling them that he was a very sick man. He also testified that about noon on April 22, 1903, Reiger called him up over the telephone and inquired about Charles Lauer's condition, when he told him that he was a very sick man. It also appears that three other physicians at different times during the illness, were called in consultation. Henry Lauer testifies in substance that on the morning of April 22d he telephoned Reiger that he wished to see him, and, when he came told him that his brother was sick, that he had brain trouble and was delirious a good deal, and then said to Reiger that he had the premium and wanted to pay him, but did not know whether he would accept it or not, when Reiger said he would. He further said that, in about 15 minutes after the premium was paid, he received a telephone message that his brother had just died, but that at the time he paid the premium he did not believe or know that his brother was dangerously ill, nor did he expect him to die; that he was directed by the wife of Charles Lauer after her husband took sick to pay the premium.

According to this evidence, at the time the premium

was paid the agent knew that the insured was sick, but did not know the nature of his illness, or that he was in a dangerous condition, or that his illness would result fatally, of that he had been suffering with delirium tremens for some three weeks, and was considered by the family physician in a critical condition for several days before his death, or that four physicians had been in attendance upon him, or that he was actually in a dying condition when the premium was paid. The agent may have been willing to accept the premium, knowing that the insured was not in sound health and that he was sick; but it is manifest that he would not have accepted the premium or waived the condition in the policy if he had known the actual condition of the insured. The waiver of a stipulation in a contract such as this, to be effectual, must not only be made intentionally, but with full knowledge of all the existing conditions, and will not be binding upon the insurer unless the agent whose acts or conduct are relied on to establish the waiver was at the time in full possession of the material facts concerning the condition of the insured. Bennecke v. Connecticut Mutual L. Ins. Co., 105 U. S. 355, 26 L. Ed. 990.

When a party seeks to avoid a condition in a contract that would defeat its enforcement by a plea that the condition was waived, he must show that the person whose acts are relied on to establish the waiver had knowledge of the essential facts necessary to enable a person of ordinary prudence and judgment to act understandingly. Generally the question as to whether or not there was a waiver is for the jury under proper instructions; but when, as in this case, the evidence is wholly insufficient to show a waiver, the court should direct the jury to find a verdict. It cannot be denied that the facts with which the agent was unacquainted when he accepted the premium were material, and that knowledge of them was essential

to intelligent action upon his part, and therefore there was no waiver of the condition in the policy, and a peremptory instruction should have been given

The judgment is reversed, with directions for a new trial in conformity with this opinion.