### George Washington Life Insurance Company v. Norcross.

(Decided December 14, 1917.)

## Appeal from Warren Circuit Court.

1. Insurance—Life Insurance—Policy—Alteration of Terms.—Where the policy does not in terms provide that the first year's premium shall be paid in cash or necessarily exclude the idea that it may be paid by note, proof of payment by note is not such an alteration of the terms of the policy as is prohibited by Kentucky Statutes, section 656, providing "Nor shall any such company or any agent thereof make any contract of insurance or agreement as to such contract, other than is plainly expressed in the policy issued thereon."

2. Insurance—Life Insurance—Premium Note—Authority to Take.— The acceptance of a note for the first year's premium, although the policy provides that the premiums shall be payable quarterly, by the company's local agent and state agent acting jointly, is a payment of the premium, where such agents are authorized to accept notes for the first year's premium, but with the understanding that they do so at their own peril, and must settle in cash with the company for the net amount due the company.

3. Insurance—Life Insurance—Lapse—Estoppel—Effect of application for Reinstatement.—The mere fact that the insured, in ignorance of his rights and in the belief, induced by the company, that his policy had lapsed, applies for reinstatement, is not such a recognition of the lapse as will estop him from shownig as a matter of fact that no lapse had occurred.

4. Insurance—Life Insurance—Action on Policy—Instructions.—
Where in a suit on a policy of insurance, plaintiff is entitled to
a peremptory instruction, it is unnecessary to consider the cor-
rectness of the theory on which the case was submitted by the
instructions.

T. W. & R. C. P. THOMAS for appellant.

PROCTER & GARDNER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

Seaton A. Norcross, brought this suit against the
George Washington Life Insurance Company, to recover
on a policy insuring the life of his wife in his favor. A
trial before a jury resulted in a verdict and judgment
against the company for the full amount of the policy,
and the company appeals.

By the policy in question, which was issued and de-
livered to Seaton A. Norcross, and his wife, Jennie F.
Norcross, the company agreed to pay to the survivor the
sum of $1,000.00, on proper proofs of the death of the
other. The policy was dated October 7th, 1914, and
issued upon written applications which were attached to
and made a part of the policy. At the beginning of the
policy the premium was stated to be $44.46. The body
of the policy contained the following provisions:

"   .   .   .   .   Premium, eleven & 78/100 dollars,
($11.78) payable on delivery of this policy and thereafter
quarter annually at the home office of the company in ex-
change for the company's receipt on or before the twenty-
fifth day of March, June, September and December in
every year during the continuance of this policy until
twenty (20) full year premiums shall have been paid, or
until the prior death of either of the insured."

The usual thirty days grace for the payment of prem-
iums was also provided for. The original applications
provided for a premium of $44.15 payable quarterly in
advance. Before the delivery of the policy, the parties
were required to  amend their applications, and the
amendment stated that the quarterly premium on the
policy applied for was to be $11.78, and that Jennie F.
Norcross's nearest birthday was thirty-one years instead
of thirty.  The insurance was solicited by T. H. Poore,
the company's local agent at Bowling Green, and V. A.
Bate, the company's state agent at Louisville. They were

told by Seaton A. Norcross that he had just returned from his vacation and did not have the money to pay the first premium. Thereupon the state agent told Mr. Norcross, that he could pay the first premium by executing his note for the sum of $44.46, and pay the note either quarterly or semi-annually as he saw fit. On November 2nd, the policy was delivered and a note for $44.46 executed to Poore and Bate. On January 4th, 1915, Mr. Norcross paid T. H. Poore the sum of $11.78. The three remaining payments were made to Mr. Poore on February 18th, April 3rd, and May 3rd. The first check given to Mr. Poore, was kept at the direction of Mr. Bate. Poore deducted his commission out of the three remaining checks and sent the net to the company at its general office in Louisville, by checks payable to the state agent. A few weeks later these checks were returned to Mr. Poore, but none of the money was ever returned to the insured.

On February 8, 1915, the company notified the insured that the policy had lapsed because of their failure to pay the second quarterly premium by December 25, 1914, or within the one month of grace allowed by the policy. The insured were further notified that they would have to file a written application for the reinstatement of the policy and undergo the usual medical examination. On June 15th, 1915, Mrs. Norcross filed a written application for reinstatement, which was considered by the company and declined on July 7th, 1915. On July 2nd, 1915, Mr. Norcross filed a similar application for reinstatement which was likewise considered and declined.

After the company claimed that the policy had lapsed because of non-payment of the second quarterly premium, Edgar Needham, supervisor of agents, was sent from the company's home office at Charlestown, West Virginia, to Bowling Green, to investigate the policy in question. While in Bowling Green, he procured affidavits from Mr. Poore and Mr. Norcross, to the effect that Mr. Bate, the state agent, had accepted from Mr. Norcross, the latter's note in payment of the first annual premium. While there, Mr. Norcross and Mr. Poore both say that Needham told Norcross in substance, not to worry about his insurance, that there was no way for the company to get out of it. He further directed Mr. Norcross to go ahead and pay the note and told Mr. Poore to collect it. Though claiming that he had no authority to make a settlement or to adjust the matter in any way, Mr. Needham

practically admits that he made these statements to Messrs. Poore and Norcross, but qualifies his admission with the further statement that he was merely expressing his own private opinion and had no authority to bind the company.

The premiums due in September and December, 1915, were sent in cash to the company at its home office at Charleston, West Virginia, but were immediately returned by the company.

Mr. Poore, who was the local agent of the company when the policy was solicited, but its state agent when he gave his testimony, testifies unequivocally to the fact that he had a right to collect the first year's premium. Mr. Milair, the company's secretary, also says that the company's agents collect the first premiums whether quarterly, semi-annual, or annual. On being asked if either Bate or Poore had authority to accept notes in payment of the premium, or modify the policy as to time or method of payment of premium, he answered as follows:

"No agent of the company had authority to accept notes in payment of premiums on behalf of the company. If a soliciting agent accepts a note, he does it at his own risk and the transaction is between him and the insured. All agents, state agents, general agents and soliciting agents are expected and required to pay the net premiums upon policies on applications secured by them in cash. No agent has authority to modify the amount of premium or the time and method of payment. The laws against discrimination are strict and all companies insist upon strict requirements with the policy provisions as to time and method of payment of premiums."

Upon being asked to state the instructions to all agents regarding the taking of notes for premiums, he said:

"There is no special instruction to agents in regard to taking notes for premiums. They are not allowed to take notes, any more than to take personal property or anything else. It is simply a matter of the company requiring in all cases, unless specifically provided for, a cash settlement of all net premiums."

When asked if his company acquiesced in any custom of allowing its agents to take notes for premiums, he replied:

"Our agents may take notes. No doubt many of them do. If they do, it is on their own responsibility. The com-

pany accepts no notes except those which are accepted by the financial department, and then as a matter of the financial management of the company, and not the insurance management. The acceptance of notes is not within the scope of their agencies, and is the private and personal matter between the agents and the insured, with which the company has no concern and of which it is usually not aware.''

Mrs. Norcross died on January 6th, 1916. The court instructed the jury as follows:

''The court instructs the jury that the policy of insurance sued on had lapsed for non-payment of the premium instalment on Jan. 25, 1915, and they will find for the defendant company, unless they believe from the evidence that thereafter the defendant's agents with authority from defendant company so to do, accepted said premium instalment and the subsequent premium instalments for the first year's premium from plaintiff with an agreement to continue said policy in force, in which latter event they will find for plaintiff the amount of said policy $1,000.00, credited by the second annual premium.''

The company insists that it was entitled to a directed verdict. Its argument is as follows: Section 656, Kentucky Statutes, provides in part: ''Nor shall any such company or any agent thereof make any contract of insurance or agreement as to such contractor other than is plainly expressed in the policy issued thereon.'' Under this section, soliciting agents can not alter the terms of the policy as to the premiums or the time of payment thereof. That being true, Poore and Bate had no authority to accept a note for the first year's premium and the policy lapsed for the non-payment of the second quarterly premium, and the insured having recognized the lapse by applying for reinstatement, was thereafter estopped from claiming otherwise. The difficulty with this argument grows out of the fact that the policy does not require the payment of the quarterly premium in cash, or necessarily exclude the idea that the premium may be paid by note. Under these circumstances, it can not be said that proof of payment by note in anywise contradicts or alters the contract of insurance. Here the note was taken for the entire first year's premium with the understanding that the insured could pay it when he saw fit. That these agents had the right to collect the first year's premium there can be no doubt. Not only does the secretary admit that the agents could take

notes, but the form used by them in making their report
to the company required them to state whether the prem-
ium was paid in cash or by note.   While the secretary
qualifies his statement that such agents could take notes,
with the further statement that the taking of notes was
a personal matter between the agents and the insured
with which the company had no concern, all that this
means is that the taking of notes is at the risk of the
agents, who must settle in cash the net amount due the
company.   In other words, such agents are responsible to
the company for the net premium whether the premium
be paid in cash or by note.   In soliciting the insurance,
Poore and Bate did not represent the insured but were
acting solely in behalf of the company.    Where agents
are vested not only with apparent, but actual authority
to accept either cash or notes for the first year's prem-
ium, the company will not be permitted to say that they
are its agents when accepting cash and not its agents
when accepting notes.    While as between himself and
the company, the agent may be   responsible for the
amount of the premium represented by the note after
deducting his commission, yet as between the company
and the insured, he is still the company's agent and not
a mere private individual acting on his own responsi-
bility.   Any other rule would place the insured at the
mercy of the insurance company and frequently deprive
him of insurance which he, as a reasonable man, had the
right to believe was in full force and effect.   Here the
note was not only accepted by the local and state agents
in payment of the first year's premium, but the note was
subsequently paid and the net amount due the company
paid to the state agent of the company.   Under these cir-
cumstances, the acceptance of the note was a payment of
the first year's premium as between the insured and the
company.   Kimbro v. New York Life Insurance Com-
pany, 108 N. W. (Iowa) 1025, 12 L. R. A. (N. S.) 421; Kil-
born v. Prudential Ins. Company, 99 Minn. 176, 108 N.
W. 861; John Hancock Mutual Life Ins. Company v.
Schlink, 175 Ill. 284, 51 N. E. 795; National Life Ins. Com-
pany v. Tweddell, 58 S. W. 699, 22 Ky. Law Rep. 881;
Washington Life Insurance Company v. Menefee, 107
Ky. 244, 53 S. W. 260, 21 Ky. Law Rep. 916; Connecticut
Idemnity Association v. Grogan, 52 S. W. 959, 21 Ky.
Law Rep. 717; Mississippi Valley Life Ins. Company
v. Neyland, 9 Bush 430.   That being true, the second
quarterly premium was paid and the policy did not
lapse because of its non-payment.

The application for reinstatement of the policy was based entirely on the company's claim that the policy had lapsed. It is evident that the insured were willing to do anything to keep the insurance in force. When told by the company's supervisor of agents, to pay the premium note, they did so. When told by the company to apply for a reinstatement, they complied with this direction in ignorance of their rights and in the belief induced by the company that the policy had lapsed and a reinstatement was necessary. Under these circumstances, the mere fact that the insured applied for a reinstatement on the sole ground that the policy had lapsed, is not such a recognition of the lapse as to estop them from showing as a matter of fact that no lapse had occurred.

In conclusion, we are of the opinion that upon the facts developed by the record, plaintiff was entitled to a peremptory instruction. That being true, we deem it unnecessary to pass on the correctness of the theory on which the case was submitted to the jury.

Judgment affirmed.