(129 So. 300)

COMMONWEALTH LIFE INS. CO. v. WILKINSON.

6 Div. 685.

Court of Appeals of Alabama.
June 24, 1930.

562

Altman & Koenig, of Birmingham, for appellee.

SAMFORD, J.

■ The first two assignments of error relate to rulings of the court on the admission and rejection of certain evidence. Even if one or both of these rulings constitute error, such error would not be sufficient upon, which to predicate a reversal, for the reason that in each instance the facts covering each question was fully gone into in minute detail, and, if in either of these instances there was error, the error was cured.

The following facts are without conflict. At the insistent solicitation of two of defendant's solicitors this plaintiff procured to be issued by this defendant a policy of life insurance on the life of her daughter, Mary L. Wilkinson, in the sum of $465, in which this plaintiff was named as beneficiary. The application was written by the solicitor, signed by plaintiff, and the premium of $.25 was paid by her on delivery of the policy. At the time of making the application the insured person took no part in the transaction further than to give a tacit consent that it be done. Prior to that time, in 1927, the insured had had an operation for tonsilitis by having her tonsils removed. Early in 1928 she had again become ill, and in July, 1928, was confined to her bed with an abscess of the lung. From July until she died on October 26, 1928, she was under the constant care of physicians. At the time of the taking of the application for this policy insured was confined to her sick bed in the room adjoining the one in which the application was being prepared and signed, and was seen in that condition by defendant's solicitors. Defendant's solicitors were told of all these things by the plaintiff, and that the girl was not an insurable risk on account of her physical condition, and that no doctor would pass her. Defendant's solicitors then told plaintiff that if the application was for less than $500 no doctor's certificate or other examination would be required. Thereupon plaintiff signed insured's name to the application, without reading or knowing its contents,

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

and, upon receipt of the policy paid the initial amount of 25 cents required. The application was dated October 5, 1928, and plaintiff was told it would have to be forwarded to the home office of the company at Louisville, where the policy would be issued. The application contained the following warranties: "Last sick, October, 1927 of Tonsilitis" and that: "Said contract shall not be binding upon the Company unless upon its date and delivery the insured be alive and in sound health." The solicitor was authorized to make inspections of risks, and made and sent to the company with the application a certificate in which he certified among other things: "I have this day October 5, 1928 personally seen interrogated and inspected the life proposed and am of the opinion that said person is in good health and is safely insurable." On this application and certificate defendant issued its policy on October 15, 1928, returning it to the solicitor for delivery. The solicitor made delivery of the policy to plaintiff, knowing that the insured was still ill, and in bed with an abscess of the lung, and with full knowledge that he was perpetrating a fraud on defendant. The policy contained as a part thereof this stipulation: "No obligation is assumed on this policy prior to its date and delivery nor unless on said date of delivery the assured is alive and in good health." There was also this clause in the policy:

"7. *Alterations or waivers.*—No person except the President, Vice-President, Secretary or Assistant Secretary of the Company, can alter this contract or waive any condition, privilege or provision thereof. Therefore, agents, (which term includes Superintendents and Assistant Superintendents), are not authorized and have no power to make, alter or discharge contracts, waive forfeitures, or receive premiums on Policies in arrears more than four (4) weeks, or to receipt for the same in Receipt Book, and all such arrears given to an Agent shall be at the risk of those who pay them, and shall not be credited upon the Policy, whether entered in the Receipt Book or not."

The insured died of the malady of which she was suffering at the date of the application, on October 26, 1928. The defendant makes tender and pays into court the premiums paid.

 It is clearly a fact, appearing from the evidence without dispute, that the solicitor who took the application for insurance on the life of Mary L. Wilkinson perpetrated a fraud on this defendant. Whether the plaintiff knew and participated in this fraud was a question for the jury under the facts. Of course, if the plaintiff did, with knowledge, participate in the fraud, there could be no recovery in this case. Plaintiff seeks to avoid this by claiming and testifying that the so-licitor, in urging her to apply for the policy, made representations to her contrary to the contents of the application which she signed, and to the effect that he would obtain a policy for less than $500 without medical examination, that she did not read it and did not know what it really contained. So the question here involved is, Is the principal bound by a waiver of conditions in the application made by defendant's solicitor, fraudulently made, by reason of imputed knowledge of the acts, constituting a waiver? The general rule that notice to an agent of any matter connected with the agency is notice to the principal has at least two notable exceptions, as well established as the rule itself. The rule has no application where the agent is acting for himself, in his own interest, adversely to the interest of his principal; nor when the agent is engaged in committing an independent fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act. The general rule is based upon the presumption that the agent will inform the principal in line with his duty, but no such presumption arises when the agent is acting for himself adversely to his principal, nor will he be presumed to communicate to his principal acts of fraud which he has committed on his own account in transacting the business of his principal. In such cases it would be both unjust and unreasonable to impute notice by mere construction under such circumstances. In a case quite similar in principle to the case at bar, the U. S. C. C. A. has given application to the exception named above. Union Cent. L. Ins. Co. v. Robinson, 148 ʀ. 358, 8 L. R. A. (N. S.) 883.

██ In the text, 2d Corpus Juris, 868 (549), the rule is stated thus: "The rule that notice to an agent is notice to his principal does not apply when the circumstances are such as to raise a clear presumption that the agent will not transmit his knowledge to his principal; and accordingly, where the agent is engaged in a transaction in which he is interested adversely to his principal or is engaged in a scheme to defraud the latter, the principal will not be charged with knowledge of the agent acquired therein." This rule finds support in a long array of decisions from many courts of last resort including several cases from U. S. Supreme Court, 2d Corpus Juris, 869 notes 10 and 11. Among these decisions are Scotch Lbr. Co. v. Sage. 132 Ala. 598, 32 So. 607, 90 Am. St. Rep. 932; Frenkel v. Hudson, 82 Ala. 158, 2 So. 758, 759, 60 Am. Rep. 736; Reid v. Mobile Bank, 70 Ala. 199; Am. Bankers' Ins. Co. v. Thomas, 53 Okl. 11, 154 P. 44. In the Frenkel Case, supra, Mr. Justice Somerville, speaking said: "It [the rule] is based upon the principle that it is the duty of the agent * * * to communicate the information obtained by him to his principal so as to enable the latter to act on it. It has no application, howev-

er, to a case where the agent acts for himself, in his own interest, and adversely to that of the principal. His adversary character and antagonistic interests take him out of the operation of the general rule, for two reasons: First, that he will very likely, in such case, act for himself, rather than for his principal; and, secondly, he will not be likely to communicate to the principal a fact which he is *interested in concealing*. [Italics ours.] It would be both unjust and unreasonable to impute notice by mere construction under such circumstances." This rule has been applied in cases where the agent was guilty of a fraud against the principal. The only case coming to our attention, where the fraud of the agent would not affect the general rule, is First National Bank of Birmingham v. Allen, 100 Ala. 476, 14 So. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80, and that decision was grounded upon the principle that if notice was not imputed the bank would be a loser by reason of the act of the principal. In the case at bar there is no such question. The plaintiff loses nothing. Her claim is based upon a contract obtained by the independent fraud of defendant's solicitor, who, when defendant learned of the fraud, returned or offered a return of the premium paid, thereby returning the status quo. Conceding that defendant's soliciting agent knew the physical condition of insured at the time of the taking of the application and the time of delivery of the policy, and that he told plaintiff the policy would be issued without medical examination, plaintiff for and on behalf of insured signed an application for the policy to be sent to Louisville, Ky., and issued from the home office of the company. The application thus signed and the policy issued and signed by the officers of the company became the contract between the parties, and there is no pretense that the contents of the application was fraudulently misrepresented to plaintiff or insured, nor were they prevented from reading same before signing or at any other time. Nor is there any pretense that the insured or plaintiff were prevented from reading the policy at the time of delivery, or that its contents were fraudulently misrepresented. In the absence of misrepresentation, fraud, or other deceit, a person who can read and write is bound by a contract which he signs, even though he may not know its contents. In this case the policy, which includes the application, was signed by both the insured and defendant, and both are bound by its terms. Lester. v. Walker, 172 Ala. 104, 55 So. 619; Dunham Lbr. Co. v. Holt, 123 Ala. 336, 26 So. 663; Terry v. Mutual Life Ins. Co., 116 Ala. 242, 22 So. 532; Bank of Guntersville v. Webb et al., 108 Ala. 132, 19 So. 14; 13 Corpus Juris, 370 (249).

█ Under the evidence in this case the contract was binding on this plaintiff, and that contract contained the two provisions above quoted, as to the health of the insured, and the officers of the company authorized to make contracts. It being admitted at the time of the application and at the time of the delivery of the policy the insured was afflicted with a serious disease, increasing the risk of loss, all of which was known both to the insured and to the plaintiff, no recovery can be had in this case. Application of the foregoing principle has been given effect in Powell v. Prudential Ins. Co., etc., 153 Ala. 611, 45 So. 208, 210, in which case it is said: "An insurance corporation may so draw the various papers connected with its contract of insurance, as to prevent general and local agents from exercising powers to the detriment of the corporation, when the substantive provisions of the contract are brought home to the insured, prior to the alleged delivery of the policy." Reference is also made to Princ v. American Cent. Ins. Co., 171 Ala. 343, 54 So. 547; Brotherhood of Ry., etc., v. Riggins, 214 Ala. 79, 107 So. 44; Am. Nat. Ins. Co. v. Rosebrough, 207 Ala. 538, 93 So. 502; Mutual Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649. The case of Northwestern Life Ass'n v. Findley, 29 Tex. Civ. App. 494, 68 S. W. 695, is based upon the assumption that the agent who delivered the policy acted in good faith towards his company, which is not the case here, and in Germania Life, etc., v. Lauer, 123 Ky. 727, 97 S. W. 363, the opinion is based upon the rule as stated, as we have tried to do in this opinion.

Under the facts of this case, and under the law as we find it, the defendant is entitled to the general charge, as was requested. The judgment is reversed, and the cause is remanded.

Reversed and remanded.