CASE 5—PETITION ORDINARY—MARCH 20.

# Hartford Life and Annuity Insurance Company v. Hayden's Adm'r.

APPEAL FROM MARION CIRCUIT COURT.

1. THE ACKNOWLEDGMENTS OF AN AGENT MADE SUBSEQUENT TO THE TRANSACTION IN WHICH HE ACTED AS AGENT can not be proved against the principal. But such testimony was not prejudicial in this case, as the matter to which the acknowledgments of the agent related was otherwise shown by competent evidence.

2. POWERS OF INSURANCE AGENTS—WAIVER OF RESTRICTION IN POLICY. —Although a policy of insurance provides that agents are not authorized to collect certain "dues," but that payment must be made at the home office, yet if a general agent of the company has by his conduct held out a particular local agent as having such authority, the company is estopped to deny the authority of the local agent, the conduct of the general agent operating as a waiver of the restriction in the policy.

3. POWERS OF GENERAL AGENTS.—A provision in a policy of insurance that "agents" are not authorized to vary its terms does not apply to general agents.

4. WHO REGARDED AS GENERAL AGENTS.—Where an insurance company is located in a State remote from that in which the insurance is effected, an agent intrusted with the general management of its business in the latter State should be regarded as a general agent, and possessing all the powers of those in charge of its business at the head office.

AVRITT & RUSSELL FOR APPELLANT.

1. The local agent who effected the insurance was only a *special agent*, with limited powers, and had no authority to vary the terms of the contract of insurance, or to collect any but admission fees; and if he exceeded his authority the company is not bound by his act. (Craycraft, &c., v. Selvage, &c., 10 Bush, 709; Ross' Ex'r v. Davis' Ex'r, 4 J. J. Mar.. 383; Dehart v. Wilson, 6 Mon., 578; Mitchell & Davis, Adm'rs, v. Sproul, 5 J. J. Mar., 264; Galbraith's Adm'r v. Arlington Mut. Life Ins. Co., 12 Bush, 35.)

2. The State agent had no more authority to alter the terms of the written contract than the local agent had. The insured had notice that no agent outside of the home office had such authority.

3. No statement of an agent can be used against the principal unless it was made with reference to the matter being transacted and as a part of the *res gestæ*. (1 Greenleaf on Evidence, sections 113, 114; Story on Agency, sec. 135; C. & L. R. Co. v. Ingles, 15 B. M.; Murphy v May, 9 Bush, 36; Davis v. Whitesides, 1 Dana, 177; Ches. & O. R. Co. v. Reeves' Adm'r, 11 Ky. Law Rep., 14.)

4. The court erred in its instructions to the jury in disregarding the limitations upon Pursley's authority, and also in making the defendant responsible in the event they should find that Hamilton held Pursley out as having authority to do certain things, Hamilton having no authority to hold Pursley out as having any power beyond that given him in the application and policy.

RIVES & SPALDING FOR APPELLEE.

1. A policy of insurance will be construed most strongly against the insurer, and all ambiguities will be resolved against the company. (Phœnix Ins. Co. v. Spiers & Thomas, 10 Ky. Law Rep., 254.)

2. If the power to waive conditions exists, a condition requiring a waiver to be written may itself be waived, just as any other condition. (Phœnix Ins. Co. v. Spiers & Thomas, 10 Ky. Law Rep., 254.)

3. While insurance companies may limit the power of their agents, yet evidence of restrictions not communicated to the applicant will not be received (Continental Ins. Co. v. Randolph, 2 Ky. Law Rep., 313), and attempted restrictions inserted in the policy will be construed most strongly in favor of the agent's powers. Thus a provision that "no agent is empowered to waive any of the conditions of the policy" has been construed to apply to *local* but not to *general* agents (Carrigan v. Lycoming Fire Ins. Co., 53 Vt., 418–428), and it is held that a clause in a policy that agents are not authorized to make, alter or discharge contracts does not apply to general agents. (Marcus v. St. Louis Mut. Life Ins. Co., 68 N. Y., 625.)

4. An agent who is intrusted with the management of the company's affairs in a State is a general agent (Southern Life Ins. Co. v. Booker,

Hartford Life and Annuity Insurance Company v. Hayden's Adm'r.

9 Heisk., 606), and where a company is domiciled in a foreign State should be deemed to possess all the powers of an agent at the head office of the company. (Campbell v. National Life Ins. Co., 24 Up. Can. C. P., 133.)

5. The tendency of recent decisions is to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law. (Phœnix Ins. Co. v. Spiers & Thomas, 10 Ky. Law Rep., 259; Ins. Co. v. Wilkinson, 13 Wall., 222; Eclectic Life Ins. Co. v. Fahrenburg, 68 Ill., 463; Farmers' Mut. Ins. Co. v. Taylor, 73 Pa. St., 342; Keenan v. Missouri State Ins. Co., 12 Iowa; Mound City L. Ins Co. v. Huth, 49 Ala., 529.)

6. The doctrine of estoppel applies with special force where the conduct of the agent relied upon as a waiver induced the acceptance of the policy. (Kreiger v. Western Fire Ins. Co., 72 Cal., 91; Van Schirch v. Niagara Fire Ins. Co., 68 N. Y., 436.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

April 4, 1887, D. W. Hayden made written application to the local agent, J. J. Pursley, for an insurance upon his life, of not over four thousand dollars, in the Safety Fund Department of the Hartford Life and Annuity Insurance Company. It stipulated that if the insured should fail to make any required payment, then the policy should be void, and that agents were authorized to collect "admission fees" only; all other payments to be made by the insured at the home office, in Hartford, Connecticut. April 18, 1887, the company issued the policy at its home office for said sum; it was sent to the local agent, and he delivered it to the insured. By its terms the insured, among other payments, was to pay to the company "expense dues" of three dollars annually upon each one thousand dollars of insurance, the first payment to be made upon the first day of the month succeeding the issual of the policy, "or by quarterly or other *pro rata* installments of the same in advance for

periods of less than a year." The policy further provided that "agents" of the company were not authorized to vary its terms, and that after an agent had delivered the policy and collected the "admission fee," no other payment under the policy could be made to him without the production of a receipt signed by the secretary of the company, but must be made at the home office.

It appears to have been left to the agent to fix or agree with the insured upon the "*pro rata* installments*" in paying the "expense dues," and neither the application nor the policy states the amount of the "admission fees."

The insured died on July 8, 1887. In this action by his personal representatives to recover the insurance, it is claimed by the company that the policy had become void before his death by reason of his failure to pay at the home office the first installment of four dollars of "expense dues," which it claims became due on May 1, 1887.

The petition avers that the insured, at the time the insurance was taken, paid Pursley eighteen dollars. The evidence upon the part of the company shows that this was the sum charged as an admission fee, and that it went to the agent if he was at work upon commission. The company says, first, that no expense fees were paid to Pursley; and second, if there were, then he had no authority to receive them, and that the insured was so notified by the provisions of both the application and the policy. In other words, that he was a special agent with limited powers, and this being known to the one dealing with him, the

principal can not be held for any thing done in excess of his authority. Undoubtedly, the company could limit the power of Pursley, who was but a special agent; and if one dealing with him as such agent knew it had done so, or as a prudent person should have so known, then he did so at his peril as to matters beyond the agent's authority.

Waiving whether the insured had a right fairly to understand that the term "admission fees" embraced the first installment of the "expense fees," yet it is shown by the evidence that when the payment was made to Pursley by him it was agreed between them that the insured had made all necessary payment to carry the insurance to September 1, 1887. In other words, that all fees or dues were paid up to that time.

A day or so after the insured had paid Pursley, the latter went back to him, claiming that by mistake he had failed to pay him enough by four dollars, and the insured paid him this additional sum, and then the agreement between them above named was made. Whether the agent agreed to commute a part of the admission fee, and which was coming to him, or not, does not appear. He is dead; but it is shown that he did not, during the life of the insured, account to the company for the four dollars, which was the amount of the installment of the expense fee due on May 1, 1887. After the death of the insured, and in August following, Pursley, who had been discharged from the service of the company in May previous, sent it to the company, but it refused to receive it. It is suggestive that the sum which the agent claimed

44        KENTUCKY REPORTS.        [VOL. 90..

Hartford Life and Annuity Insurance Company v. Hayden's Adm'r.

the insured, through mistake, still owed him after
the first payment, and which he collected, was the
exact amount of the installment of the expense due.
In any event, we think it is satisfactorily shown he
agreed with the insured that the latter had paid all
that was necessary to tide the policy to September
1, 1887.

The appellees were improperly allowed to prove
some statements of Pursley relative to insuring the
deceased, made after it had been effected. The ac-
knowledgments of an agent made subsequent to the
transaction in which he acted as agent can not be
proven against the principal. They are not a part of
the *res gestæ.* Whatever the agent does in the prose-
cution of the principal's business is the act of the
principal; and, therefore, what he may say relative to
it while so engaged—*dum fervet opus*—is competent
evidence against the principal. (1 Greenleaf on Evi-
dence, sec. 113.)

In this instance, however, the matter to which they
related was proven by other competent evidence. Their
admission was not, therefore, prejudicial to the sub-
stantial rights of the appellant, and the exception upon
this score is not, therefore, to be regarded. (Civil Code,
sec. 338.)

The question at last in the case is, had the insured
made such a payment of his dues that the policy was
in force at his death?

Conceding that he had notice from the application
and the policy that Pursley had no right to collect
the expense dues, yet it appears that one Hamilton,
who was the general manager of the company for Ken--

tucky and several other States, went with Pursley to the town where the insurance was taken upon the life of the deceased, and together they solicited insurance there. They distributed the cards and printed statements of the company, showing that Hamilton was such manager ; and he gave it out publicly that Pursley was the agent of the company, and authorized to receive the fees and dues for insurance in it. There is evidence showing that he did collect them, including the "expense fees," with the knowledge and consent of Hamilton. It is true there is some evidence *contra*, but there was sufficient testimony to authorize the jury to find against the company upon this point.

Upon this state of case the lower court instructed the jury as follows: "If the jury believe, from a preponderance of the evidence, that J. J. Pursley, at the time of delivery of D. W. Hayden's policy, collected from him an amount of money estimated and fixed by said Pursley as sufficient to keep the policy in force until September 1, 1887, and that said Pursley was held out by the company, or its general agent, F. B. Hamilton, as its duly accredited agent, having authority to estimate, fix and collect from applicants the first payment on delivery of policies, they must find for plaintiffs the amount claimed, to wit: four thousand dollars and interest thereon from October 27, 1887; otherwise they should find for the defendant."

This instruction embodied the whole law of the case in pointed and concise language.

Although the printed forms of the applications and policies of the company notified its patrons that its agents had power to receive only the "admission fees,"

and conceding that this might not be fairly understood to include the first payment upon the "expense fees," yet the company could undoubtedly, either expressly or inferentially, by conduct, waive this limitation upon the power of its agent. It could act only through natural persons, and here was its general manager upon the ground, and saying to the public, by both word and conduct, that payment of all or any of the fees for insurance in it could be made to the local agent, and that it would be all right. It is said, however, that this action is upon a written contract; that no fraud or mistake as to it is pleaded, and that its terms can not, therefore, be varied by oral evidence of what occurred contemporaneous with the making of it. This rule was designed to prevent fraud and further justice. If it were applicable and controlling under circumstances like those now presented, it would be promotive of injustice.

Here the general manager, who must be regarded as standing in the place of the company, publicly authorized the local agent to receive all dues. He held him out to the public as so authorized. This operated to waive the restriction in the application and policy as to his powers in this respect, and estops the company from now denying it. The insured and the public had a right to regard the conduct of Hamilton, and his direction as to the payment of the insurance dues to the local agent, as a subsequent parol alteration *pro tanto* of the contract of insurance, and the company itself must be regarded as having thereby created an honest belief that the limitation upon his power in this respect had been waived. If it were

not, therefore, estopped to now deny it, a fraud would practically result, and the injured party be remediless. It may be said, however, that Hamilton was but an agent. Grant that, as between him and his principal, his powers were limited, yet the insured should not be treated as having notice of it from the terms of his application and the policy, because the term "agent," as therein used, should not be regarded as applying to a general manager of the company. He represents it generally. It is present in him. The public naturally rely upon him as having full power in reference to its business, and he should, in fairness, be regarded as so held out to the community by it. Especially should this be so where the home office of the company is located in another State. Restrictions and terms in a policy will be construed most strongly against the company, and in favor of the agent's powers as to those dealing with it.

In Carrigan v. Lycoming Fire Insurance Company, 53 Vt., 418, the policy provided that *no agent* had the power to waive any of the conditions of the policy, and the provision was held to apply to *local* but not to *general* agents, the latter being presumed to possess authority to transact the business of the company generally.

Where a company is located in a State remote from that in which the insurance is effected, one intrusted with the general management of its business in the latter State should be regarded as a general agent (Southern *Life* Insurance Co. v. Booker, 9 Heiskell, 606), and possessing all the powers of those in charge of its business at the head or home office. Both the

interest of the company and the protection of the public require this to be the rule; and, as held in Marcus v. St. Louis Mutual Life Insurance Company, ·68 N. Y., 625, a clause in a policy that "agents" are not authorized to make, alter or discharge contracts, should not be regarded as applying to general agents. The public had a right, owing to the conduct of the appellant's general agent, to believe that the local ·agent had a right to receive all the fees for the in-·surance. The company, therefore, so held him out to the insured and the public; and this worked a waiver of the restriction in the policy, granting it to be as extended as claimed by the appellant.

The ruling of the lower court was in conformity to this view of the law, and the judgment is, therefore, ·affirmed.