CASE 5.—ACTION BY THE JOHN KING COMPANY AGAINST
THE LOUISVILLE & NASHVILLE RAILROAD CO.,
ON A CONTRACT FOR DIGGING PITS.—December 18.

# John King Co. v. L. & N. R. R. Co.

Appeal from Daviess Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for defendant. Plaintiff appeals.—Reversed.

1. Trial—Causes for Particular Dockets—Action at Law or in
Equity.—An action to recover on express assumpsit for work
done for defendant at his special instance is an action at
law, and the fact that it subsequently appears that the issue
is whether the parties agreed to a modification of the con-
tract for the work as to the price for a part of the work,
and that plaintiff changed his claim so as to base his right
on the abrogation of the contract by a parol agreement sub-
sequently entered into, does not change the action; and it
cannot be transferred to equity, in the absence of matters
appearing which are cognizable in equity.

2. Jury—"Right to Jury Trial."—The "right to jury trial" is the
right to the submission to a jury of all the issues of fact in
the case on the law given by the court, and the jury deter-
mines the rights of the litigants under the law; and the
fact that a party entitled to a jury trial is given a jury trial
of the most important part of his case, transferred to the
equity docket, does not satisfy the law guaranteeing the right
of trial by jury, since the jury in such a case only advises
the judge as to certain submitted facts.

3. Denial of Right to Jury Trial—Prejudicial Error.—The denial
of the right of trial by jury is prejudicial error, though the
appellate court may think the party denied a jury trial did
not have a substantial case.

4. Contracts—Parol Contracts—Validity.—A contract not re-

John King Co. v. L. & N. R. R. Co.

quired by statute to be in writing may be in parol.

5. Contracts—Modification—Validity.—A contract which can be modified may be modified by parol as effectually as by writing.

6. Contracts—Modification—Consideration.—A contract for excavating and grading ground was entered into under a mutual mistake of fact as to the character of the earth to be removed; the parties believing that the material consisted of soil and loose sandstone and shale, while in fact it consisted of solid rock. The contractor, after discovering the true nature of the material, threatened to abandon the work. Subsequently the parties agreed to a modification of the contract, by changing the compensation for the removal of the solid rock, and the contractor completed the work. Held, that the modified agreement was supported by a valid consideration, and the contractor was entitled to recover thereunder.

SWEENEY, ELLIS & SWEENEY for appellants.

SYNOPSIS OF POINTS RELIED ON FOR REVERSAL.

1. The original contract sued on was in writing, but was modified by a subsequent oral agreement between the parties.

2. The defense relied on: The answer to the petition and the amended petition pretends to be a traverse; if to be considered a traverse, the denials are most disingenuously made. The suit was properly brought at law, but the court over appellants objection transferred it to equity and therein committed a reversible error. (Section 6, Civil Code; Newman's Pleading and Practice; Jones v. Letcher, 13 B. Monroe, 363.)

3. Appellants were entitled to a jury trial. (Creader v. Walker, 7 Bush 1; 15 Ky. Law Rep. 497; O'Connor v. Henderson Bridge Co., 95 Ky. 633; 16 Ky. Law Rep. 244; 78 Ky. 435.)

4. The court erred to the prejudice of appellants in refusing to instruct the jury as in instructions A, B and C offered by plaintiffs and in submitting questions to be answered by the jury on its own motion.

5. The lower court erred to the prejudice of appellants in refusing to allow them to dismiss the action without prejudice after the jury had returned its answer to one of the questions submitted by the court. (Vertree v. M. N. & M. R. R. Co., 95 Ky. 314; Ringo v. Farmers Bank, 101 Ky. 91; Reese's Admr. v. Utsey, 113 Ky. 839; Platter v. Board, &c., 103 Ind. 360; Pence v. Garrison,

John King Co. v. L. & N. R. R. Co.

&c., 93 Ind. 345; Bosey v. Gallagher, 20 Wallace U. S. Supreme Court, 670.)

6. Cases exactly in point as to the error of the lower court in transferring the case to equity. (Tucker v. Russell, 26 Ky. Law Rep. 1086; Meek v. McCall, 80 Ky. 371.

7. There was no trial of this case in the lower court either by the court or jury.

8. The petition states a good cause of action. (Munroe v. Perkins, 20 American Decisions 475; 1 American Decisions 92; 8 American Decisions 696; Hayward v. Leonard, 19 American Decisions 272; Beach on Modern Law of Contracts.)

9. A written contract may be modified by subsequent oral agreement if the parties entered into the written contract under a mistake or misapprehension of the facts, and where it would be inequitable and unjust to require a specific performance, and such an agreement is binding on the parties. (Munroe v. Perkins, 20 American Decisions 475; Lynch v. Henry 75 Wis. 631; Ruege v. Gates, 71 Wis. 634; Beach on Law of Modern Contracts, 198 and Note 1; King v. Duluth Railroad Co., 63 N. W. Rep. 1105; Michaud v. McGregor, 63 N. W. Rep. 479.)

10. The best considered case showing that plaintiffs petition states a good cause of action is Munroe v. Perkins, 20 American Decisions 475, to which case the court's attention is especially invited.

WILBUR F. BROWDER for appellee.

POINTS AND AUTHORITIES.

1. The alleged verbal contract sued on is void for want of consideration and appellee's demurrer to the petition as thrice amended should have been sustained. (McNutt v. Loney, 153 Pa. St. 281; Merchants' Bank v. Davis, 3 Ga. 112; Bryan v. Brazil, 52 Iowa 350; Munroe v. Perkins, 20 Am. Dec. 475 (Mass); Knight v. Watts, 21 Va. 175; McCarty v. Hampton Bldg. Association, 61 Ia. 287; Smith v. Whildin, 10 Pa. St. 39.)

2. The case was properly transferred to equity the trial court expressly reserving on the common docket for trial by the jury the strictly legal issues involved; and after verdict appellants' motion to dismiss without prejudice came too late and the circuit court did not err in overruling it. (Secs. 10, 11, 12 and 371 of the Civil Code; Hill v. Phillips, 87 Ky. 169; Carder v. Weisenburgh, 95 Ky. 135; O'Conner v. Henderson Bridge Co., 95 Ky. 633; Small v. Reeves, 104 Ky. 289; Meek v. McCall, 80 Ky. 371; Reese

John King Co. v. L. & N. R. R. Co.

v. Youtsey, 113 Ky. 839; Blakey v. Johnson, 13 Bush 197; Kennedy v. Ten Broeck, 11 Bush 241.)

3. The verdict of the jury, deciding the strictly legal issues submitted to them by the court, was not advisory, but was conclusive and binding on the court, and could not be set aside except on the ground that it was palpably against the evidence; so that appellants' motion to set aside the verdict and grant them a new trial was properly overruled, they nowhere complaining that the finding of the jury was contrary to or not sustained by the evidence.

4. There was a total failure of proof in support of appellants' claim that the written contract of May 18, 1905, was rescinded, and a new verbal contract substituted therefor.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—
Reversing.

Appellee advertised for bids for excavating and grading grounds at Corbin, Ky., necessary to enlarge its yards and for the accommodation of its machine shops at that point. The surface of the country was uneven, so that a hill some 10 or 12 feet high had to be cut down for a considerable width, and the dirt and material taken from the excavation used in making a fill at an adjacent point, where the land was lower than the track level. To enable bidders to know what the character of the formation to be excavated was, as well, perhaps, as to learn for itself that fact, appellee caused two test pits to be sunk in the hill—one near the north end and the other near the south end of the area to be cut through. These test pits were about 10 or 12 feet deep—as deep as the proposed excavation was to be—and from four to six feet in diameter. Appellants were invited to submit bids to do the work. They were contractors who engaged in doing that class of work. A member of the firm and his clerk went upon the ground at the invitation of appellee's engineer in charge of the work, and inspect-

ed it as carefully as the conditions would admit of without sinking further test pits, or boring through the surface at other points, so as to develop the nature of the underlying earth material. So far as the surface and the appearance of the surroundings indicated, appellants contend there was nothing to suggest either to appellee's engineers or to appellants that the body of the material to be excavated was different from what was disclosed by the test pits sunk by appellee. These pits showed only soil, clay, and loose sandstone and shale, according to appellant's testimony, all of which could have been readily taken out by the use of steam shovels. They did not indicate there was a stratum of solid rock beneath the surface of the hill elevation, and above the level of the proposed track site. The rock did not show as an outcropping. Upon this appearance appellants submitted a bid to do the work for 24 cents a cubic yard. This bid was accepted, and a contract in writing entered into. After working on the job a few weeks appellants came upon a stratum of solid sandstone rock extending practically throughout the area to be excavated, and from its bottom to within 14 iches or three or four feet (varying in places) of the top. The whole excavation represented some 66,574 cubic yards, while the ledge of sandstone rock constituted, it is claimed, 32,287 cubic yards. When appellants came upon the ledge of rock, they quit work, and appealed to appellee's engineer for relief. They represented to him that they had not contemplated such a situation and were unable at the contract price to complete the work, that before they could do so it would bankrupt them, and that they would abandon it unless some other arrangement could be made. There had been some delay in beginning the work, and it

looked as if it would not in any event be completed within the contract period. Appellee's engineer insisted that his superiors were pressing for the completion of the work, that the delay was embarrassing them in their business, and he was quite insistent that it be pushed to completion with the utmost expedition. Appellants claim that thereupon it was agreed in parol between them and the engineer in charge that their contract should be modified, and that it was then modified, by changing the compensation for excavating and removing the sandstone rock stratum from 24 cents a cubic yard to a reasonable price, to be subsequently agreed upon. Whereupon appellants resumed and completed the work. The written contract provided for monthly estimates of work done under it, and for monthly payments of 90 per cent. of such estimates until the work was completed, when the whole of the balance was to be paid. Monthly estimates of the work done were made each month, based, as to price, upon the written contract, and payments were made accordingly. About a year after the work was finished appellants brought this suit to recover a reasonable compensation for the work of excavating the rock; it being alleged that 75 cents a cubic yard was a reasonable price for that work. Credit was admitted for the payments made, and the earth and loose substances contained in the excavated plot were charged for at the contract price of 24 cents a cubic yard.

When the pleadings reached the stage that profert of the written contract was made, the circuit court sustained a general demurrer to the plaintiff's petition alleging a modification or change of the written agreement by the subsequent parol agreement. Thereupon the plaintiffs amended their petition to conform,

it is stated, to the opinion of the circuit judge, in which
it was alleged that the written contract was abandoned
and abrogated by the parties, and a parol agreement
entered into under which the work was done.    An
issue was made as to the parol contract's having
been entered into, as well as to abrogation of the writ-
ten contract.   Issue was also joined as to the reason-
ableness of the charge of 75 cents a cubic yard for
removing the rock.   The court then, of its own motion
and over the objection of the plaintiffs, transferred
the cause to equity, at the same time directing an
issue out of chancery to be submitted to a jury as to
whether the written contract had been rescinded by
the parties, and a parol contract entered into in lieu
of it, and, if it should be found that there had been
such change, then as to the value of the work done
under the alleged parol agreement in removing the
rock.    The evidence was heard, and under instruc-
tions of the court, which propounded to the jury the
two questions above outlined, the jury found a verdict
that the written contract had not been abrogated.
They did not return an answer to the second query
propounded, and it was unnecessary that they should
do so, if the first was properly submitted and an-
swered.

It is argued here, for appellee, that the evidence
shows that the written contract was the only one made
between these parties.   But we do not feel that we
have a right to say so.   Besides, other questions of
practice arise in the case, which affect the substantial
rights of the plaintiffs, the decision of which we find
to be our sole duty upon this record.   This action was
begun properly as an action at law, to recover upon
express assumpsit for labor done and performed for
the defendant at its special instance.   Before the issue

was joined it had developed that originally the parties had agreed in writing concerning the work; but it was alleged, and disputed by the other side, that the parties had subsequently agreed to a modification of the contract in so far as it touched the price to be paid for a certain part of the work. This did not change the form of action. It was still an action at law. Later, under stress of the interlocutory rulings of the trial judge, appellants again changed their claim, making it finally that a written contract covering the same subject-matters had been abrogated, and the parties had by parol agreement substituted an entirely independent contract for doing the work. Still the question was one triable at law exclusively. There was not a claim, nor does there appear ground for one, that the accounts were so complicated or difficult or that for other reason the matter was cognizable in equity. We think the court erred to appellants' prejudice in transferring the case to the equity docket. O'Connor v. Henderson Bridge Co., 95 Ky. 633, 16 Ky. L. R. 244, 27 S. W. 251, 983; Creager v. Walker, 7 Bush, 1. The fact that appellants were given a jury trial of the most material parts of their case does not satisfy the law which guarantees the right of trial by jury. That right is not alone that 12 laymen may pass upon some question of fact, even a vital one to the case, but that all the issues of fact—in this State the whole case, upon the law given them by the court—shall be so tried. The essential difference is that in the one case the judge advises the jury as to the law, upon which they determine the rights of the litigants; in the other the jury advises the judge as to certain submitted facts, whereupon he decides the case upon both law and facts. The ancient right of trial by jury is one of material importance, and where it is due a litigant

its denial is always deemed prejudicial error, even though the appellate court might think the party denied had not a substantial case.

As the case must be returned for a new trial, we think it proper to notice also the rulings of the court upon the demurrer to the petition as amended before the last amendment which pleaded the abrogation of the written contract. It was assumed in the circuit court, we are told, that a written contract cannot be modified by a subsequent parol agreement. But such is not the law. Unless the statute requires the contract to be in writing, it may be in parol. If it can be modified or altered at all, it can be done by parol as effectually as by writing. The doctrine that a written contract supersedes all previous parol negotiations leading up to it has no place in the question we are considering. Manifestly it could not supersede a subsequent parol agreement. But probably the action of the circuit court was based upon the notion that the new contract—that is, the alteration or modification—was without consideration. It was argued here that the parties had by their written agreement fully covered the matter of appellants' doing the whole work at a stipulated price and in a given time; that a change of either was without consideration in this case, as appellants gave up nothing and appellee received nothing that was not already provided for by the written contract. Whatever the consideration was for the abrogation of the writing and the substitution of the parol agreement, in its entirety, was equally available to sustain the alteration of the written agreement by a subsequent parol agreement. The circuit court evidently followed Munroe v. Perkins, 9 Pick. (Miss.) 298, 20 Am. Dec. 475. There the question was, as in most, if not all, the cases cited in

John King Co. v. L. & N. R. R. Co.

that opinion, whether a written contract under seal could be amended by a subsequent parol agreement. It was held, under the stress of the rule regarding the sanctity of instruments under seal, that to do so there must have been an executed parol contract, in which the previous written instrument was canceled or waived, although the Massachusetts court allows that the difference between contracts under seal and simple contracts had not been regarded as so important in dealing with the question in hand.

Was there a consideration in the instant case, aside from the annulment of the written contract, leaving the parties without any contract, and therefore free to base a new arrangement upon the mutual undertakings of the parties therein, for the new contract by which the old was altered or modified—not entirely waived? We think there was, in this. The parties had entered into the old contract under a mutual mistake of fact. It was competent for them to alter their agreement, so as to compass the truth. Their minds had not in fact met upon the real thing to be done, because neither had contemplated its existence, and appellee had not expected or invited a bid for removing rock, nor had appellant submitted a bid therefor. It is true the language of the writing, by a fairly liberal construction, could be held to include the rock stratum subsequently discovered. Nevertheless it was not so intended by the parties pending their negotiations. Appellees' exhibiting the test pits under the circumstances disclosed was equivalent to saying: "This is the character of material you will have to move." It knew that appellants so understood it. After their discovery of the true condition, which was materially different from that represented and relied on, a court of equity might have

relieved appellants from the execution of the contract under the circumstances. The relief a court might have granted it was within the competency of the parties to do voluntarily; and it was sufficient consideration upon which to base a subsequent agreement with respect to the changed conditions. We do not mean to say that .the fact is that appellant was ignorant of the true conditions of the earth substances to be removed, and that appellees made the alleged parol agreement. What we decide is that that issue was one. properly joined in the pleadings before the later amendments above noticed, and, whether upon the one theory or the other, the case was triable as a common-law action, by jury, if demanded.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent herewith.

BARKER and LASSING, JJ., dissent.