## Miles, Administrator v. National Union Fire Insurance Company.

(Decided November 27, 1923.)

### Appeal from Marion Circuit Court.

Insurance—Applicant for Insurance Bound by Statement in Application that no Insurance Effective until Delivery of Policy.— Applicant for fire insurance was bound by a statement in the application blank that no insurance was to become effective until the policy was issued and delivered, though he did not read the application, and he could not rely on oral statement of agent the property was insured, or that he would provide insurance, even though a note for the premium was given the agent.

H. W. RIVES, C. S. HILL, and S. A. RUSSELL for appellant

F. M. DRAKE, BRUCE, BULLITT & GORDON, and W. H. SPRAGENS, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

On the 14th of December, 1921, Frank Miles, as administrator and heir of F. H. Miles, deceased, applied to the firm of Newton & Madden, local agents of appellant, National Fire Insurance Company, for a policy of fire insurance on a dwelling house on a farm, to the amount of $1,500.00, and for a policy of $800.00 on a barn on the same premises. The agents gave Miles an application blank to be filled in and signed by him. This he did and delivered it to the agents. Among other things the application blank provided: "It is understood and agreed that this application shall not be construed as a contract of insurance against said company until the same shall be approved by the officers of the said company, which approval shall be evidenced by the issuance and delivery of its policy."

It is the contention of appellant Miles that the agents of the insurance company at the time of the signing of

the application for insurance, verbally agreed that on behalf of appellee company they would insure the property of appellant and further stated to him that this insurance was in force and effect. In testifying on this subject Miles stated:

"19. Q. No, I am talking about before that, at the time you had the talk with Mr. Madden about insuring the property, what was said and what was done between you and Mr. Madden?

"A. Well, he just said there was no insurance—

"20. Q. I am talking about—wait a minute and understand the question—I am talking about when you went to Mr. Madden's office and first asked him to insure the property, what did he say and what did you say on that occasion, away before the fire?

"A. Oh, he said, all right, I'll insure it for you. . .

"57. Q. State whether or not Mr. Madden, at the time you signed the first paper, made any statement to you about when your insurance should begin, if so, what did he say?

"A. He didn't say. . . . "

While the application for insurance was sent in by the agents no policy of fire insurance was issued by appellee company to appellant on the house and barn mentioned; on the contrary, the company declined to issue the insurance for some reason. At the time of the signing of the application appellant Miles executed his note to the agents of appellee company for the premiums which would become due upon the policy if the application was accepted and the policy issued, and this note was not returned or offered to be returned by the agents up to the time of the fire which destroyed the residence in February, 1923, and indeed until after the institution of this action. The question in this case is not whether a verbal undertaking to insure the property of appellant is or might be valid, but whether a contract of insurance of any character was made between the agents and appellant Miles whereby his house and barn were insured. As we have seen, the application blank which he signed specifically stated that no insurance was to become effective until the policy was issued and delivered. This application was made and signed by appellant, and while he says he did not read it, he must be charged with having knowledge of what it contained. It was his duty to read it be-

fore signing it or at least to know its contents. So at the very inception of the transaction appellant Miles knew that the company would not become bound for insurance upon his application until the policy was actually issued by it. He further knew from the contents of this application that the agents of the company had no right or power to bind the insurance company to pay a loss except by a written policy approved by the officers of the company and delivered. The power of the agents, it must be admitted, did not allow them to make a binder or verbal contract by which the company would be bound as by a policy of insurance. Being without such authority the things they said with respect to the making of such a contract could not and did not bind or obligate the company for a fire loss.

Appellant also insists that the agents of appellee company by the verbal statement of one of them to the effect, "We will provide you insurance; your policy is all right," or words of similar import, did not bind the company, for as we have seen appellant knew the agents were without authority to obligate the company as if by policy in the absence of the issual and delivery of such a contract.

It is said, however, that the company is bound because appellant executed and delivered his notes to the agents for the premium on the policy, and this is the strongest point in appellant's favor. Inasmuch as the agents had no authority, nor apparent authority, to bind the company on a policy of insurance until such a contract was actually issued, they could not do by indirection what they were prohibited from doing directly, bind the company on a policy by taking a note for a premium from the applicant for insurance. While we recognize the right and power of insurance agents in certain cases to bind their company by verbal contract or by a memorandum usually called a binder, as if a policy of insurance had been issued, and to protect an applicant for insurance until the policy is actually issued, we are of the opinion that the facts in this case do not bring it within the rule, and the trial court did not err in dismissing appellant's petition.

Judgment affirmed.