# Massachusetts Mutual Life Insurance Co. v. Sexton.

(Decided June 6, 1934.)

BEN V. SMITH & SON for appellant.
B. J. BETHURUM for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On January 23, 1931, Charlie Andrew Sexton applied to the Massachusetts Mutual Life Insurance Company for a policy insuring his life in the sum of $2,500 in favor of his wife, Bertie S. Sexton. The application, which was prepared by George H. McDonald, the company's general agent at Chattanooga, Tenn., and signed by the insured, in addition to stating that the applicant

310

had not paid the first premium, contained the following provisions:

"I understand and agree: (1) that if I shall not have paid the amount of the premium on the insurance herein applied for to the company's agent at the time of making this application, such insurance shall not be in force until the approval of this application by the Company at its home office, the payment of the first premium as required therein, and the delivery of the policy to me or my agent during my lifetime; and that thereupon said policy shall be considered as having become effective upon the date stipulated in the policy as the date on which the insurance begins.

"I understand and agree: (1) that the policy, if issued, shall be upon the Company's regular form or the plan applied for; (2) that no agent of the Company has any authority to make or modify contracts on behalf of the Company, or to alter or waive any of the agreements, conditions, or requirements herein contained."

On January 24, 1931, the insured was killed in a railroad wreck. On January 27, 1931, the policy was issued and mailed to general agent McDonald for delivery to the insured. Because of his death, the policy was not delivered, but was returned to the company.

Thereafter the company denied all liability, and the beneficiary, Bertie S. Sexton, brought this action to recover on the contract. The ground on which a recovery was sought was that after the application was signed it was agreed between the insured and general agent McDonald that the insurance should go into effect immediately after the medical examination, which was had, and that McDonald waived the payment of the first premium which was tendered to him. In addition to denying the verbal contract and waiver of payment of the first premium, the company pleaded that the first premium was not paid; that the policy was never delivered during the lifetime of the insured; that McDonald was without authority to modify or waive any of the conditions of the contract; and that the insured was estopped to assert such claim. After issue was joined, the case was assigned for trial. At the conclusion of plaintiff's evidence, the company moved for a peremptory, which motion was overruled. After the company had introduced

certain evidence, the court indicated that parol evidence to alter the application was not admissible without a plea of fraud or mistake, and permitted plaintiff to file amended replies alleging fraud and mistake. On its own motion the court then discharged the jury and transferred the case to the equity docket. Thereafter additional evidence was taken by depositions, and by agreement the case was then submitted on these depositions and the evidence taken at the former trial. At the conclusion of the reading of the evidence on behalf of plaintiff, appellant moved for judgment, which motion was overruled. On final hearing the court adjudged that the written application after its execution was modified by a parol agreement providing that the insurance should go in effect at once, and that the agent of the company waived the immediate payment of the first premium in advance, and rendered judgment in favor of plaintiff for the sum of $2,500. The company appeals.

While numerous questions are discussed in briefs, the main questions to be decided are: (1) Did McDonald, after the execution of the application, agree that the insurance should go into immediate effect and waive payment of the first premium? (2) Did he have authority to act in the matter?

If it had been sought to vary or alter the terms of the written application by parol evidence of what occurred prior to, or simultaneously with, its execution, then, of course, it would have been necessary to allege and prove fraud or mistake, but that is not the case. The claim is that after the execution of the application, the general agent agreed that the insurance should go into immediate effect, and waived payment of the premium. Where the parties agree that the insurance shall go into immediate effect, it is usual to give a binding receipt so providing. If in this case such receipt had been given, it cannot be doubted that it would have bound the insurer, notwithstanding the provision in the application that the insurance should not take effect until the approval of the application by the company at its main office. That being true, no reason is perceived why the provision of the application might not be modified or changed as in the case of other contracts by a subsequent parol agreement. John King Co. v. Louisville & N. R. Co., 131 Ky. 46, 114 S. W. 308; Id. (Ky.) 116 S. W. 1201; Paducah Grain & Elevator Co. v. Marshall, 196 Ky. 673, 246 S. W. 30; Covington & Anderson

v. Melvin, 197 Ky. 573, 247 S. W. 714; Vandivier v. Tye, 231 Ky. 630, 21 S. W. (2d) 1006. No question of fraud or mistake being involved, it was not necessary to transfer the case to equity, but as the case was finally submitted to the court for a decision on the law and facts by agreement of the parties, appellant is not in a position to complain. We come then to a consideration of the evidence. It appears that the insured and his brother, Sam I. Sexton, went to McDonald's office in company with their father, James Sexton, who wished to collect from the company some past due dividends amounting to about $500. While transacting this business, McDonald suggested that it would be wise for each of the two sons to take out a policy of insurance. After some discussion, each decided to take out a $2,500 policy and the applications were written and signed. Thereafter James Sexton, the father of the insured, suggested that both policies should go into immediate effect, and, according to his evidence, McDonald agreed to the arrangement saying, "Yes, your father is right, boys." At the same time he offered to pay the premiums and had the money to do so. McDonald replied, "Never mind about that, I will take care of that," and sent the boys right on to the doctor. The evidence of Sam I. Sexton, the son, is to the same effect. McDonald's account of what occurred is in the following words:

> "The old man Sexton wanted them put into force immediately. He even went so far as to say that he would see that the premiums were paid; but his proposition was not accepted and the insurance was not put in force."

The case is not one where the general agent denied that there was any conversation on the subject. The conversation is admitted, the only difference being that he claims the proposition was not accepted and the insurance was not put in force, while the father and son both say, in substance, that it was agreed that the policy should be put into immediate effect, and that when the father offered to pay the premiums McDonald said, "Never mind, he would take care of that." It is at once apparent that the evidence was sufficient to establish the agreement and the waiver of the first premium.

We come next to the question of authority. On behalf of the company it is argued that the insured agreed in the application that the insurance should not be in force until the approval of the application by the com-

pany at its home office, the payment of the first premium, and the delivery of the policy to him during his lifetime, and that no question of apparent scope of authority is presented, as the insured was informed in the application that no agent had the authority to make or modify contracts, or to alter or waive any of the agreements, conditions, or requirements therein contained. In Hartford Life & Annuity Ins. Co. v. Hayden's Adm'r, 90 Ky. 39, 13 S. W. 585, 11 Ky. Law Rep. 993, we held that a provision in the policy of insurance that agents are not authorized to vary its terms, does not apply to general agents, but that general agents are regarded as possessing all the powers of those in charge of the company's business at the head or home office. Several years later the question was again considered, and we held that a provision in a life policy that no alteration or waiver of any of the conditions of the policy shall be valid, unless made in writing and signed by an officer of the company, might be waived by a general agent of the company. New England Mut. Life Ins. Co. v. Springgate, 129 Ky. 627, 112 S. W. 681, 113 S .W. 824, 19 L. R. A. (N. S.) 227. In the early case of Mississippi Valley Life Ins. Co. v. Neyland, 9 Bush, 430, we held that a general agent of an insurance company, whose business it was to solicit applications for insurance and receive the first premiums, had a right to waive the payment in money, and in lieu thereof take a promissory note or undertake to make the payment himself, notwithstanding a recital in the policy that it should not be binding until the cash part of the first premium was actually paid in money. Manifestly, if a policy provision may be altered or waived by a general agent, there is no reason why a similar provision in the application may not also be altered or waived. We therefore conclude that McDonald, the company's general agent, had the authority to agree that the insurance should go into immediate effect, and to waive the payment of the first premium.

Judgment affirmed.