# Life & Casualty Ins. Co. of Tennessee v. Daniel.

May 6, 1941.

G. D. Milliken, Sr., for appellant.

Harlin & Harlin and H. W. Vincent for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Felix Lindsey, a Bowling Green soliciting agent for the Life & Casualty Insurance Company of Tennessee, solicited and secured an application for a policy of insurance from Henderson Daniel on September 7, 1937. The policy was a $500 one with a double indemnity provision in case of accidental death. The weekly premium was twenty-five cents. Lindsey testified that Daniel made no payment on September 7th, but promised to pay him fifty cents on the following day; that when he then saw him Daniel paid only twenty-five cents; and that he gave him a receipt for that amount, but not on the regular receipt form. The application which Lindsey forwarded to the company on September 11th showed that fifty cents was collected from the applicant. The application had attached to it a receipt form which provided, among other things, that the company, upon its approval of the application, would be liable from the time it was made if

the amount paid at that time was not less than four weekly premiums. This receipt also provided for its surrender in the case of a claim for benefits prior to the issuance of the policy. Lindsey testified further that the standard receipt form was not delivered to Daniel on September 7th, or on the day a premium was paid. Daniel was killed accidentally on September 12th. Without knowledge of his death the company issued the policy on September 20th. It was not delivered to the beneficiary who was Daniel's wife. Mrs. Daniel obtained a judgment for $1,000 in the lower court; hence this appeal.

In urging reversal the company insists that there was no legally consummated contract of insurance between it and Daniel and that the verdict of the jury is not supported by the evidence. It is argued that an application for insurance constitutes a proposal or offer, the terms of which must be met before a contract of insurance is consummated; that an applicant is bound by the conditions set forth in the application; and that he is presumed to know the terms of insurance upon which the policy of insurance may be issued and the specific limitations of the soliciting agent as set out in the application.

We have examined this record carefully, including the application form. This examination convinces us that there was a condition under which Daniel's insurance could have become effective at the time of the making of the application. In his case the payment of premiums in the amount of $1 would have been sufficient, subject of course to the approval of the company. The latter question seems not to be in the picture, because the company did issue a policy, though it did so after the time of Daniel's death, of which it had no notice; and also the company says in its brief that, had the application shown the payment of $1, it would not have denied liability. Lindsey's testimony is not as satisfactory as it could be. He says he made out the application showing therein that fifty cents was paid by Daniel; that he gave Daniel no receipt at the time the application was made, but gave him a receipt not on the regular form the following day upon the payment of twenty-five cents. Notwithstanding this, he sent in the application which showed that two weekly premiums were paid. Against the position of the company is the contention of

Mrs. Daniel that her husband paid Lindsey $1, four weekly premiums. In support of this position Daniel's sister testified that she saw a receipt written on a blank piece of paper and signed by Felix Lindsey which bore the following words, or words to the same effect: "Life and Casualty Insurance Company. Received of Henderson Daniel $1.00 for insurance. Insurance now in benefit." Four police officers testified that the general reputation of Daniel's sister as to virtue and morality was bad.

The question is, Should the case have been submitted to the jury under the foregoing circumstances? Our answer is in the affirmative. Proof was offered by the company as to its method of handling applications and claims for insurance before the issuance of a policy. It stresses also the fact that the application which Daniel signed showed a payment of fifty cents rather than $1. Certainly it can not be contended that, if $1 was paid and the appropriate receipt delivered to the applicant, a claim could be denied because of the loss of the receipt. It is pointed out in the company's brief that Lindsey would not have entered the payment of fifty cents on the application if $1 had been paid, notwithstanding the fact that he admits the entering of a payment of fifty cents when he says that Daniel gave him only twenty-five cents. The receipt which Daniel's sister said she saw and which was not produced contained the substance of the standard receipt form in so far as this case is concerned, namely, the payment of $1 and "insurance now in benefit." It is argued that Lindsey had no authority to give such a receipt and that he was only authorized to use the standard form when there was a payment of four weekly premiums at the time of the making of the application. But we do not think that a claim for insurance can be denied on such technical grounds. The case of Miles v. National Union Fire Ins. Co. of Pittsburgh, Pa., 201 Ky. 179, 256 S. W. 7, is cited in support of the proposition that an applicant for insurance is bound by the provisions of an application form; but there was nothing in the application form signed by Daniel providing that no insurance would be in effect until the delivery of the policy. The case of Preferred Risk Fire Ins. Co. v. Neet, 262 Ky. 257, 90 S. W. (2d) 39, is cited in support of the proposition that there must be an agreement or meeting of the minds of

both parties on the essentials of an oral or written insurance contract. That proposition is sound. However, an examination of that case does not show that it supports the position of the company in the case at bar, but rather that of Mrs. Daniel. See, also, Massachusetts Mutual Life Ins. Co. v. Sexton, 255 Ky. 309, 74 S. W. (2d) 206, and Continental Ins. Co. v. Haynes, 10 Ky. Law Rep. 276. Mrs. Daniel had a right, under the circumstances herein, to present proof as to the amount of premium paid by her husband. The testimony of Daniel's sister, and other facts and circumstances heretofore mentioned, were such as to warrant the submission of the case to the jury.

Wherefore, the judgment is affirmed.