THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILLIAM McDERMOTT, Defendant.*

City Magistrate's Court of New York, Staten Island District, Borough of Richmond, September 2, 1942.

*Farrell M. Kane, District Attorney (John F. Kavanagh* of counsel), for the People.

No appearance for defendant.

KEUTGEN, C. M. The defendant herein was charged in the complaint with malicious mischief, to wit: the breaking of five glass windows. He was duly arraigned before the court and after a hearing the magistrate presiding ordered him committed to Bellevue Hospital for observation as to his sanity. He was returned from Bellevue Hospital to this court with a report by two duly qualified psychiatrists, who reported that he was at the date of the report, July 15, 1942, psychotic and suffering from such a state of insanity as to be incapable of understanding the charge against him, or the proceedings, or of making his defense.

* See, also, *People ex rel. Klesitz* v. *Mills,* 179 Misc. Rep. 58.

Thereupon, in reliance upon the decision of this court in *People* v. *Silletti* (17 N. Y. Supp. [2d] 947), an order was made recommitting the defendant to the custody of the department of hospitals with directions to that department to take appropriate proceedings in the Supreme Court for the commitment of the defendant to a proper State hospital.

The defendant has now been returned to this court with a supplemental report from the department of hospitals, finding that he is still in the same state of insanity and stating that proceedings cannot be taken in the Supreme Court at this time since a criminal charge is still pending against the defendant and this court is requested to make an order for defendant's commitment to a proper State institution.

It is necessary to decide therefore whether this court has power to make such determination.

In *People* v. *Silletti* (*supra*) and also in *People* v. *Pershaec* (172 Misc. Rep. 324), there are expressions to the effect that no such power exists but neither of these decisions constitutes a precedent binding upon this court.

It is therefore in order to examine the pertinent statutes to make this determination.

Section 870 of the Code of Criminal Procedure apparently clothes this court with such power. It provides, in substance, that where a defendant is charged with a felony or a misdemeanor and is not under indictment therefor, or is charged with an offense not a crime and not a traffic infraction, the court having jurisdiction of the defendant may stay the proceedings and order the defendant to be examined to determine the question of his sanity and thereupon the subsequent proceedings shall be as set forth in sections 659–662-c inclusive of the Code of Criminal Procedure.

In the city of New York there is only one court, The City Magistrate's Court, in which a defendant can appear charged with a felony or misdemeanor and not under indictment, or charged with an offense not a crime, et cetera. The Legislature has therefore clothed this court in clear, unambiguous language with the requisite power unless for some reason the Legislature did not have the power to pass such law.

For a proper understanding of the question, a general examination should be made of the entire statutory scheme of dealing with the question of determining the lunacy of persons accused of being of unsound mind. General jurisdiction over insane persons and incompetents is one of the general powers of the Supreme Court in this State. (Civ. Pr. Act, § 1356.) This

includes the power to administer the estates of incompetents, to appoint committees of the person and property and generally to take all necessary steps. However, there are many other courts in addition to the Supreme Court which have been entrusted by the Legislature with power to adjudge a person insane and to commit him to a proper State institution. The general legislative scheme appears to be that in the case of persons against whom any criminal proceeding is pending, the power to adjudge insane resides in the court having jurisdiction for the time being over the defendant. If no criminal proceeding is pending, then the power is given to the court nearest to the defendant's abode for the time being.

Thus, if a person is not in confinement on a criminal charge, the application to have him adjudged insane may be made to "a judge of a court of record of the city or county, or a justice of the supreme court of the judicial district in which the alleged insane person resides or may be * * *." (Mental Hygiene Law, § 74, subd. 1.)

In the case of a person not in confinement on a criminal charge, alleged to be mentally defective, the application may be to "a judge of a court of record of the city or county, or of a children's court, or a justice of the supreme court of the judicial district in which the alleged mentally defective person resides or may be * * *." (Mental Hygiene Law, § 124, subd. 1.)

If the person alleged to be insane is a prisoner in a State prison serving an unexpired sentence for felony, he may be transferred to Dannemora State Hospital for the Insane upon the certificate of a physician or psychiatrist. (Correction Law, § 383.) If at the expiration of his term he is still in the hospital and still insane, an application for the extension of his commitment shall be made by the superintendent of Dannemora State Hospital to a judge of a court of record. (Correction Law, § 384.) If the person alleged to be insane is a prisoner serving a sentence of a year or less, the application shall be made by the warden of the workhouse, penitentiary, or reformatory, in which the defendant is confined, to a judge of a court of record. (Correction Law, § 408.) If a defendant has been indicted for a felony or misdemeanor, the court having jurisdiction of his person may proceed to determine whether or not he is insane. (Code Crim. Proc. § 658.) Also, as previously stated, if a defendant alleged to be insane has not been indicted and is charged with a felony, misdemeanor or offense, then the court to whose jurisdiction he is subject may decide the question of his sanity. (Code Crim. Proc. § 870.) In addition to all of the

foregoing, the Court of Special Sessions in the city of New York is empowered to "inquire into the insanity of a defendant." (N. Y. City Criminal Courts Act, § 31, subd. 4.)

This general plan, that resort may be had to whatever court is most convenient to the person alleged to be insane, seems reasonable and logical. The question of its constitutionality should be examined in the light of the principle laid down in *People ex rel. Henderson* v. *Supervisors* (147 N. Y. 1), that the validity of a legislative act must be upheld unless it is void beyond reasonable doubt.

By section 18 of article 6 of the State Constitution, the Legislature may establish (and therefore may confer jurisdiction upon) local and inferior courts. The only limitations upon this power are: *first,* "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate" (State Const., art. 1, § 2); *second* (which is not material here), that no inferior local court created after January 1, 1895 shall be a court of record (art. 6, § 18), and *third,* "The legislature shall not hereafter confer upon any inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon county courts by or under this article." (State Const., art. 6, § 18.)

The first question, therefore, is whether or not the trial of an issue of sanity is a case in which trial by jury has been heretofore guaranteed.

In *Sporza* v. *German Savings Bank* (192 N. Y. 8), the question was not directly in issue because all of the judges of the Court of Appeals held that a jury trial had been duly waived. However, in the extended dicta written both by the majority and the minority, it appeared that the issue as to sanity was one tried by the Chancellor and that the jury was not a common-law jury. Thus the court says (192 N. Y. 17): "It is thus apparent that at the time the provision to the effect that a trial by jury in all cases in which it has heretofore been used shall remain inviolate forever was first incorporated into our Constitution, the custom prevailed, on the part of the chancellor, in order to inform his conscience, to require a trial by jury of the question of the insanity of a person, in all cases of doubt, in proceedings taken with reference to his commitment and to the disposal of his property."

In *Matter of Wendell* (1 Johns. Ch. 600), Chancellor KENT said that a proceeding *de lunatico inquirendo* was within the jurisdiction of the Court of Chancery and that the verdict of a jury, if one were summoned, was merely *ad informandam conscientiam.*

The same opinion was expressed by Chancellor WALWORTH in *Matter of Tracy* (1 Paige, 580).

From the cases last cited it appears that the jury referred to was a jury of not less than twelve nor more than twenty-four men, the concurrence of twelve of whom was necessary for a verdict. However, when the verdict was received the Chancellor was not required to accept it.

"Although there is authority apparently to the contrary, generally where trial by jury is not a matter of right the verdict is merely advisory and not binding on the court, which may accept it, or reject it and decide the issues itself or grant a new trial." (30 Corpus Juris Secundum, Equity, § 510, p. 904.)

This is not the sort of jury trial which is guaranteed by the Constitution. What is meant by a trial by jury is obviously a trial in which the verdict of the jury is final and binding upon the court.

In *People* v. *Cosmo* (205 N. Y. 91, 99), the court said: "The one thing guaranteed by the Constitution is the right of trial by jury in all cases in which it had been used before the adoption of either of our successive Constitutions. We have already called attention to the fact that this means a common-law jury of twelve drawn by some process in which the final right of selection is preserved to the citizen."

To the same effect see *People* v. *Dunn* (157 N. Y. 528); *People ex rel. Comaford* v. *Dutcher* (83 N. Y. 240). The same result has been reached uniformly in decisions in other states under like constitutional provision. In *John King Co.* v. *Louisville & N. R. R. Co.* (131 Ky. 46), the Kentucky Court of Appeals had the question of what constitutes a jury trial presented squarely. The action was one on contract. The case was transferred to the equity calendar of the lower court. In that court certain issues were framed and sent to the jury for trial. The defendant thereupon contended that it had been deprived of its legal right to a trial by jury. The court said (131 Ky. 53):

"The fact that appellants were given a jury trial of the most material parts of their case does not satisfy the law which guarantees the right of trial by jury. That right is not alone that 12 laymen may pass upon some question of fact, even a vital one to the case, but that all the issues of fact—in this state the whole case, upon the law given them by the court—shall be so tried. The essential difference 's that in the one case the judge advises the jury as to the law, upon which they determine the rights of the litigants; in the other the jury advises the judge as to certain submitted facts, whereupon he decides the case upon both law and facts."

I conclude therefore that entrusting the trial of the issue of sanity to a magistrate does not infringe the constitutional prohibition against depriving the defendant of the right to a trial by jury. Does this legislation then infringe the other constitutional limitation forbidding the investing of inferior and local courts with equity jurisdiction?

I think that the second question is also to be answered in the negative. 4 Pomeroy on Equity Jurisprudence ([5th ed.], § 1311), says: "* * * it is absolutely certain that the corresponding jurisdiction over the person and property of lunatics and idiots, and all others who may be adjudicated *non compos mentis,* was derived by delegation from the crown; it was a portion of the king's executive power as *parens patriæ,* and did not belong to the court of chancery by virtue of its inherent and general judicial functions. * * * [The power] was exercised by the chancellor alone, and not by the court of chancery. After this special jurisdiction had thus been exercised in any particular case, by adjudicating an individual to be a lunatic, and by appointing a committee of his person and property, a further jurisdiction then arose in the *court of chancery* to supervise and control the official conduct of the committee; but this supplementary jurisdiction of the *court* seems to have been a part of its general authority over trusts, trustees and fiduciary persons."

"Equity jurisprudence" clearly means the powers usually and customarily exercised by the Chancellor's court and has no reference to the personal prerogatives of the Chancellor. This distinction between the power to adjudge a person insane on the one hand, and the power to administer his estate on the other, is recognized in our statutes. If the power to adjudge insane were a part of equity jurisdiction, it could not lawfully be vested as it now is in the County Courts, in the Courts of General Sessions, in the Court of Special Sessions, and generally in courts of record, which in the city of New York include the Municipal Court and the City Court.

For the foregoing reasons, therefore, I hold that section 870 of the Code of Criminal Procedure is a valid and constitutional exercise of the legislative power investing the city magistrates of the city of New York with power to determine the sanity of a defendant over whom their court has jurisdiction, and to make an order committing him to a proper State institution for the insane, if he be found to be insane pursuant to the procedure outlined in sections 659 to 662-c [now §§ 659-662-f], inclusive, of the Code of Criminal Procedure.